Julius Roy **HARDING, Respondent,**

v.

Jeanette **LOHMAN, Director of Revenue, and Department of Revenue, Appellant.**

No. WD 57343.

Missouri Court of Appeals, Western District.

Aug. 29, 2000.

---

8. Dr. Henry Marsh testified as an expert witness in plaintiffs' case in chief.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

W.C. Hodge, Knob Noster, for respondent.

Before HOWARD, Presiding Judge, ELLIS, Judge and LAURA DENVIR STITH, Judge.

ELLIS, Judge.

Julius Roy Harding has been convicted three times for driving while intoxicated (DWI). His Missouri Driver Record reveals that his first conviction was on March 5, 1986 in Cooper County, the second conviction was on September 21, 1992 in Johnson County, and the most recent conviction was on January 6, 1993 in Henry County. On March 23, 1998, The Director of Revenue (Director) issued to Harding a ten-year denial of his driving

privileges, relying on § 302.060(9) [1] as authority. The period of denial was to begin effective April 22, 1998, and continue through January 6, 2003, ten years from his most recent DWI conviction, at which time Harding would be eligible for relicensing. Harding filed a petition for review in the Johnson County Circuit Court contesting the Director's denial. On April 23, 1999, the trial court held a hearing on Harding's petition for review. The parties presented the case to the court based only on the Department of Revenue's administrative records. Harding did not contest the convictions, but argued that the Director had no authority to immediately deny his driving privileges. The court determined that the Director had no authority under § 302.060(9) to deny Harding's driving privileges and it ordered the Director to cease all attempts to suspend or revoke his license. The Director appeals.

■ We will uphold the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it misstates or misapplies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Lane v. Director of Revenue,* 996 S.W.2d 117, 119 (Mo.App. E.D.1999).

■ In his sole point on appeal, the Director contends he had statutory authority to deny Harding his driving privileges for ten years under § 302.060(9); thus, the trial court erred in setting aside the denial. The Director argues that one of the counties in which Harding received a DWI was slow in filing the ticket with the Department of Revenue and therefore, it had no notice of the conviction until March 18, 1998. Five days later, on March 23, 1998, the Director sent Harding a letter notifying him that his privilege to drive a motor vehicle in Missouri would be denied for ten years effective April 22, 1998. The letter further informed Harding that the period

of denial would expire on January 6, 2003, ten years after the date of his last conviction.

Under the version of § 302.060 in effect at the time of Harding's most recent DWI conviction in January 1993, the statute provided in pertinent part as follows:

The director shall not issue any license hereunder:

* * *

(9) To any person who has been convicted more than twice of violating state law or a county or municipal ordinance, where the judge in such cases was an attorney and the defendant was represented by or waived the right to an attorney in writing, relating to driving while intoxicated; except that, after the expiration of ten years from the date of conviction of the last offense of violating such law or ordinance relating to driving while intoxicated, a person who was so convicted may petition the circuit court of the county in which such last conviction was rendered and the court shall review the person's habits and conduct since such conviction. If the court finds that the petitioner has not been convicted of any offense related to alcohol, controlled substances or drugs during the preceding ten years and that his habits and conduct show him to no longer pose a threat to the public safety of this state, the court may order the director to issue a license to the petitioner if he is otherwise qualified under the provisions of sections 302.010 to 302.540. No person may obtain a license under the provisions of this subdivision through court action more than one time.

§ 302.060, RSMoCum.Supp. (1992).[2] This statute afforded the Director no authority to deny driving privileges until an application was made for a new license. *Adkisson v. Director of Revenue,* 891 S.W.2d 131, 133 (Mo. banc 1995); *Hancock v. Di-*

---

1. All statutory references are to RSMo-Cum.Supp. (1998) unless otherwise indicated.

2. The language of § 302.060(9), RSMo-Cum.Supp. (1992), is identical to the language contained in § 302.060, RSMo (1994).

*rector of Revenue,* 935 S.W.2d 776, 778 (Mo.App. S.D.1996); *see also Stahl v. Director of Revenue,* 998 S.W.2d 601, 603 (Mo.App. S.D.1999); *Pointer v. Director of Revenue,* 891 S.W.2d 876, 879 (Mo.App. E.D.1995).

In *Adkisson,* after Adkisson had been twice convicted of a DWI and once convicted of driving with excessive blood alcohol content (BAC), § 577.012, the Director attempted to deny Adkisson's driving privileges pursuant to § 302.060(9). *Adkisson,* 891 S.W.2d at 131. The Director sent him a "Notice of Loss of Driving Privilege" stating that his driving privileges would be denied for ten years, effective June 21, 1993. *Id.* at 131–32. Adkisson immediately filed a petition for review and the trial court denied him relief. *Id.* at 132. On appeal, our Supreme Court found that the trial court had correctly denied relief, but the Court upheld the lower court's decision on the basis that Adkisson failed to state a claim upon which relief could be granted. *Id.* The Supreme Court adopted the language used by the Southern District in *Silman v. Director of Revenue,* 880 S.W.2d 574 (Mo.App. S.D.1994) to aid in explaining the application of § 302.060:

> [T]here is no language in § 302.060 that grants authority to the director of revenue to revoke an operator's permit; the statute prohibits the director of revenue from issuing a license to certain applicants. Nor does § 302.060(9) refer to a revocation period of ten years. The statutory ten year period is the length of time a person to whom issuance of a license has been denied under § 302.060(9) must wait before petitioning the circuit court to order the director of revenue to issue a license. This case is not an appeal from a refusal of Director to issue a license; § 302.060(9) simply does not apply. The portion of the notice that states Licensee's "privilege to legally operate a motor vehicle has been denied for 10 year minimum" is nothing more than unartfully drafted, premature advice of the ten-year waiting period Director likely would seek to enforce against Licensee if he reapplies for a driver's license. As they did in their pleadings and at trial, the parties, in their Point I arguments, debate a non-justiciable controversy.

*Adkisson,* 891 S.W.2d at 132–33 (*quoting Silman,* 880 S.W.2d at 576).

The Legislature amended § 302.060 in 1996, revising the first line thereof. Prior to the amendment, the statute provided: "The director shall not issue any license hereunder." After the amendment, the introductory provision states: "The director shall not issue any license and shall immediately deny any driving privilege." § 302.060, RSMoCum.Supp. (1996) (emphasis added).[3] Harding argues the amendment did not change the statute, but merely clarified it. We disagree.

---

3. The full text of the statute is:
The director shall not issue any license and shall immediately deny any driving privilege:
(1) To any person who is under the age of eighteen years, if such person operates a motor vehicle in the transportation of persons or property as classified in section 302.015;
(2) To any person who is under the age of sixteen years, except as hereinafter provided;
(3) To any person whose license has been suspended, during such suspension, or to any person whose license has been revoked, until the expiration of one year after such license was revoked;
(4) To any person who is an habitual drunkard or is addicted to the use of narcotic drugs;
(5) To any person who has previously been adjudged to be incapacitated and who at the time of application has not been restored to partial capacity;
(6) To any person who, when required by this law to take an examination, has failed to pass such examination;
(7) To any person who has an unsatisfied judgment against such person, as defined in chapter 303, RSMo, until such judgment has been satisfied or the financial responsibility of such person, as defined in section 303.120, RSMo, has been established;
(8) To any person whose application shows that the person has been convicted within one year prior to such application of violating the laws of this state relating to failure to stop after an accident and to disclose the person's identity or driving a motor vehicle without the owner's consent;

■ When the Legislature amends a statute, it is presumed that the legislature intended to effect some change in the existing law. *Hagan v. Director of Revenue*, 968 S.W.2d 704, 706 (Mo. banc 1998); *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992); *Bennett v. Director of Revenue*, 889 S.W.2d 166, 169 (Mo.App. W.D.1994). The Legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent. *State v. Rumble*, 680 S.W.2d 939, 942 (Mo. banc 1984); *State v. Harris*, 705 S.W.2d 544, 548 (Mo.App. E.D.1986). Moreover, a statute should "never be construed in a manner which results in the mooting of the legislative changes since the legislature is never presumed to have committed a useless act." *Harris*, 705 S.W.2d at 548. To amend a statute and accomplish nothing from the amendment would be a meaningless act. *Kilbane v. Director of Dept. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976).

The 1996 amendment obviously changes the meaning of the statute and its application. Prior to the amendment, the Director did not have authority to "immediately deny" driving privileges under § 302.060, RSMo (1994). *Stahl*, 998 S.W.2d at 603. Rather, the Director had to wait to deny privileges until the driver applied for a new license or tried to renew his license. By adding the language, "and shall immediately deny any driving privilege", the legislature was clearly responding to *Adkisson* and the other cases construing § 302.060 RSMo (1994), by granting the Director authority to deny driving privileges even before the driver applies for a new license.

■ Harding argues that because five years had passed from the date of his last DWI conviction, the Director did not "immediately deny" his driving privileges, therefore, his driving privileges cannot be denied under the statute. Harding relies on *Stahl*, 998 S.W.2d 601, to interpret the phrase, "immediately deny". His reliance on *Stahl* is misplaced.

In *Stahl*, the driver was convicted of vehicular manslaughter on April 15, 1993. *Id.* at 602. The Director was not notified of the conviction until July 2, 1998. *Id.* On July 7, 1998, the Director sent Stahl a

(9) To any person who has been convicted more than twice of violating state law, or a county or municipal ordinance where the judge in such cases was an attorney and the defendant was represented by or waived the right to an attorney in writing, relating to driving while intoxicated; except that, after the expiration of ten years from the date of conviction of the last offense of violating such law or ordinance relating to driving while intoxicated, a person who was so convicted may petition the circuit court of the county in which such last conviction was rendered and the court shall review the person's habits and conduct since such conviction. If the court finds that the petitioner has not been convicted of any offense related to alcohol, controlled substances or drugs during the preceding ten years and that the petitioner's habits and conduct show such petitioner to no longer pose a threat to the public safety of this state, the court may order the director to issue a license to the petitioner if the petitioner is otherwise qualified pursuant to the provisions of sections 302.010 to 302.540. No person may obtain a license pursuant to the provisions of this subdivision through court action more than one time;

(10) To any person who has been convicted twice within a five-year period of violating state law, or a county or municipal ordinance where the judge in such cases was an attorney and the defendant was represented by or waived the right to an attorney in writing, of driving while intoxicated, or who has been convicted of the crime of involuntary manslaughter while operating a motor vehicle in an intoxicated condition. The director shall not issue a license to such person for five years from the date such person was convicted for involuntary manslaughter while operating a motor vehicle in an intoxicated condition or for driving while intoxicated for the second time. Any person who has been denied a license for two convictions of driving while intoxicated prior to July 27, 1989, shall have the person's license issued, upon application, unless the two convictions occurred within a five-year period, in which case, no license shall be issued to the person for five years from the date of the second conviction;

(11) To any person who is otherwise disqualified pursuant to the provisions of sections 302.010 to 302.780, chapter 303, RSMo, or section 544.046, RSMo.

notice that his driving privileges would be denied for five years beginning August 8, 1998, pursuant to § 302.060 RSMo.Cum. Supp. (1997), but that he may be eligible for immediate relicensing after August 8, 1998. *Id.* The court did not address the issue of whether the Director could have denied Stahl's driving privileges between August 28, 1996, when the amendment to the statute became effective and April 15, 1998, five years after Driver was convicted of vehicular manslaughter. *Id.* at 603. Rather, the *Stahl* court determined that because the five-year period for which driving privileges could have been denied had expired, the Director had no authority under the statute to deny Driver's privileges. *Stahl,* 998 S.W.2d at 603. Harding acknowledges in his brief that "the *Stahl* decision stand[s] for the proposition that [the] 'denial' period of driving privileges begins the effective date of ineligibility and runs for that period of time set forth in the subdivisions of § 302.060, and that no denial of driving privileges may [be] imposed outside of that ineligibility period." This is not the question before us today. The question before us is whether the Director can deny driving privileges after the amendment to the statute but before the ten-year period for denial expires.

As noted previously, the statute now grants the Director authority to deny driving privileges before the driver applies for a new license. This is a result of the legislature's amendment adding the phrase, "immediately deny", to the statute. The Director cannot deny driving privileges until he has notice of the convictions from the circuit court. The Director received notice of a third conviction on March 18, 1998 and sent a notice denying Harding's driving privileges five days later on March 23, 1998. Although there was a five-year lapse between the last conviction and the denial of privileges, as soon as the Director received notice of a third DWI conviction, he immediately sent the denial notice to Harding, thereby complying with the statute.

The Southern District of this court was faced with a similar issue in *Jennings v. Director of Revenue,* 9 S.W.3d 699 (Mo. App. S.D.1999). The Department of Revenue notified Jennings in 1997 that his driving privileges were being denied for five years because he had been convicted of two DWI's within a five-year period. *Id.* at 699. The denial was effective on May 31, 1997, for DWI convictions that occurred on July 11, 1990 and March 17, 1993. *Id.* The Department was delayed in denying Jennings' driving privileges because it did not receive notice of the 1993 conviction until April 25, 1997. *Id.* The Department mailed Jennings another notice on February 24, 1998, denying him driving privileges for ten years pursuant to § 302.060(9), RSMoCum.Supp. (1996). *Id.* at 700. The ten-year denial was based on the two convictions identified in its earlier notice and a conviction on June 29, 1994. *Jennings,* 9 S.W.3d at 700. The Department did not receive notice of the 1994 conviction until February 19, 1998. *Id.*

The trial court found that the Department's actions were not barred by the equitable doctrine of laches. *Id.* The Appellate Court affirmed the trial court's decision, finding that laches did not apply, there was no affirmative misconduct in the case by the state, and that Jennings had been permitted to drive during a significant period of time when his driving privileges should have been denied. *Id.*

Although Harding does not assert the defense of laches, he does claim the Department was in error for denying his driving privileges five years after the date of his last DWI conviction. Using the reasoning in *Jennings,* Harding has been driving for a five-year period when his driving privileges should have been denied. The Department had the authority to deny Harding's driving privileges as soon as it gained knowledge of a third DWI conviction.

In regard to the length of Harding's suspension, § 302.060(9) states in pertinent part:

[A]fter the expiration of ten years from the date of conviction of the last offense

of violating such law or ordinance relating to driving while intoxicated, a person who was so convicted may petition the circuit court ... and the court shall review the person's habits and conduct since such conviction. If the court finds that the petitioner has not been convicted of any offense related to alcohol ... during the preceding ten years and ... petitioner ... no longer pose[s] a threat to the public safety ... the court may order the director to issue a license to petitioner. ...

The Director denied Harding's driving privileges until January 6, 2003. Harding's most recent DWI conviction occurred on January 6, 1993. Therefore, on January 6, 2003, ten years after his most recent DWI conviction, Harding can petition the Circuit Court asking that the Director be ordered to issue him a driver's license.

The judgment is reversed and the Director's denial of Harding's driving privileges is reinstated.

All concur.