**STATE of Missouri, ex rel. ACTING PUBLIC COUNSEL John COFFMAN, Appellant,**

v.

**PUBLIC SERVICE COMMISSION OF the STATE of Missouri, et al., Respondents.**

Nos. WD 63133, WD 63134, WD 63135.

Missouri Court of Appeals, Western District.

Aug. 10, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 2004.

Application for Transfer Denied Dec. 21, 2004.

---

Michael F. Dandino, Senior Public Counsel, Jefferson City, for appellant.

David A. Meyer, Jefferson City, for respondent PSC.

Mark W. Comley, Jefferson City, for respondent AT & T.

Carl J. Lumley, Leland B. Curtis, St. Louis, for respondent MCI.

Lisa C. Hendricks, Overland Park, KS, for respondent Sprint Communications.

Before LOWENSTEIN, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

AT & T Communications of the Southwest, Inc (AT & T), Sprint Communications Company, L.P. (Sprint), and MCI WorldCom Communications, Inc. (MCI) (collectively referred to as the Companies) filed, pursuant to § 392.500,[1] proposed tariff revisions with the Public Service Commission (Commission), seeking to add monthly surcharges that would apply to certain customers in Missouri. The Office of the Public Counsel (OPC) filed several motions objecting to the proposed tariff revisions and seeking hearings thereon, as provided by § 392.230.3. The Commission denied the OPC's motions and approved the requested tariff revisions of the Companies. The OPC appealed the Commission's decisions to the Circuit Court of Cole County, which affirmed the actions of the Commission.

The OPC raises five points on appeal in each of which they claim that the Commission erred in approving the proposed tariff revisions requested by the Companies. In Point I, it claims that the Commission erred because its decision violated § 392.200 in that, in approving the requested surcharges, the Commission failed to consider whether they were just, reasonable, and non-discriminatory. In Point II, it claims that the Commission erred

because its decision violated § 392.200 in that no reasonable justification was shown by the Companies for the disparate treatment of similarly situated customers with respect to the surcharges. In Point III, it claims that the Commission erred because its finding that the surcharges were just and reasonable were not supported by substantial and competent evidence. In Point IV, it claims that the Commission erred because its decision violated § 254(g) of the Federal Telecommunications Act of 1996, 47 U.S.C. §§ 151 et seq., prohibiting carriers from charging higher interstate rates based on geography and location in that the "surcharges applied to Missouri customers and not to all other state customers and had the impact of Missouri customers paying effectively higher rates for interstate toll." In Point V, it claims that the Commission erred because its decision was not supported by adequate findings of fact and conclusions of law, as required by §§ 386.420.2 and 536.090, in that it failed to make any findings as to the facts on which its conclusion that the surcharges were just and reasonable was based.

We reverse and remand.

## Facts

### AT & T's Proposed Tariff Revisions

On August 14, 2001, AT & T submitted proposed tariff revisions, including:

A monthly service charge will be applied to AT & T customers who are presubscribed to AT & T for interLATA service. This monthly service charge is applied if a customer has $1.00 or more of billable charges and credits on their bill, including, but not limited to, monthly recurring charges, minimum usage, or single bill fee charges. This charge

1. All statutory references are to RSMo 2000, unless otherwise indicated.

does not contribute towards the minimum monthly usage charge.

Customers in AT & T's Lifeline program and Federal Price Protection Plan, as well as those customers making less than $1.00 worth of long distance calls a month, are exempt from this service charge. Customers who have AT & T Local Service are also excluded from this charge

|  | Per Month |
|---|---|
| Per Account | $1.95 |

At approximately the same time, it sent a postcard to customers who were pre-subscribed for inter-LATA long distance, explaining that it was imposing the surcharge on them to recover access charges that it was required to pay to local exchange carriers in Missouri for the use of the local network in completing in-state long distance calls:

Your local telephone company in Missouri currently charges AT & T to carry your in-state long distance calls over their lines. As a result, AT & T will begin to include in your monthly bill a $1.95 In–State Connection Fee, starting September 15, 2001.

On September 4, 2001, the OPC filed a motion asking the Commission to enter an order suspending AT & T's proposed tariff revisions and to hold evidentiary, public hearings on the matter. In the motion, the OPC alleged that the proposed surcharge was unjust, unreasonable, and discriminatory, in violation of § 392.200, in that it imposed a surcharge "without regard to customer actual usage," meaning that customers with low-volume toll calling would be assessed the same surcharge as customers with considerable or high-volume toll calling.

On September 7, 2001, the Staff filed a response to the motion, recommending that the Commission approve the proposed tariff revisions. In support of its recommendation, the Staff argued that the proposed surcharge was not discriminatory, noting that customers have the ability to switch service providers, and that the Commission does not typically scrutinize the rate structure of competitive long distance providers beyond compliance with a few limited rate requirements identified in § 392.500. On September 13, 2001, the Commission suspended the proposed tariff revisions until November 17, 2001, and ultimately suspended them until December 22, 2001.

On October 31, 2001, the Commission held a question and answer session on the proposed tariff revisions. At the proceeding, Michael Dandino of the OPC offered additional arguments against the proposed surcharge. Dandino argued that the proposed surcharge would discriminate against rural customers because it would exempt customers with AT & T local service, and AT & T local service is only available to customers in the St. Louis and Kansas City metropolitan areas. Dandino also argued that, although the surcharge was described as an in-state connection fee, "it draws from a charge that applies for any billings for interstate services, too, so, effectively, they are increasing interstate rates," in violation of § 254(g) of the Federal Telecommunications Act. In addition, Dandino argued that the surcharge would be unreasonably discriminatory if it applied only to residential customers, as there was no rational basis for differentiating between residential and business customers.

On November 13, 2001, AT & T filed a "post-hearing" brief in which it claimed that the exemption of its local customers from the surcharge was not unreasonably discriminatory because "AT & T does not incur that same access expense when AT & T is both the local and the toll provider," and because AT & T is "waiving the pro-

posed charge to local customers in an effort to sell more services to customers." AT & T further argued:

AT & T's proposed tariff recovers the cost of the interstate and intrastate access differential in the manner in which the costs are truly incurred. AT & T is doing this to avoid unfairly penalizing toll users, especially high volume toll users, who implicitly subsidize low volume and no volume toll customers. Inflating per-minute rates forces these customers to pay a disproportionate amount relative to the actual cost of serving these customers. It is also the high volume residential toll customers that look to other technologies such as wireless or Internet long distance because it is more economical than paying high per minute charges because it more [sic] economical for them to do. Out of competitive necessity AT & T must develop a rate structure that reduces the incentive for high volume customers to shop elsewhere. This charge does that.

As to the OPC's argument that the proposed surcharge discriminated against rural customers, AT & T argued:

This type of non-traffic sensitive rate element is far less discriminatory than the current access regime that recovers non-traffic sensitive costs through traffic-sensitive, per minute rates. As stated above, it is this regime that unfairly penalizes toll users, especially high volume user, including those in rural areas.

In its brief, AT & T also disputed the OPC's claim that the proposed surcharge discriminated against residential customers, arguing that it was a valid distinction insofar as "[i]t is a fact that business customers pay different rates than residential customers."

On the same date, the OPC filed its "post-hearing brief," arguing again that the proposed surcharge was discriminatory, because it applied only to residential customers and not to business customers:

There is no reasonable justification or public policy reason for this discriminatory treatment. Business customers may very well "vote with their feet" . . . if a surcharge is applied since business customers will seek out a competing carrier with lower costs. Unfortunately, residential customers are not usually "sophisticated" telecommunications customers and for a variety of reasons (lack of information or interest, inertia, fear of change) are less likely to switch carriers.

On December 13, 2001, the Commission entered an order approving the proposed tariff effective December 22, 2001. In its order, the Commission determined that §§ 392.500 and 392.230.3 provide that "so long as they comply with the requirements of the law, tariff sheets filed by a company may be an adequate record for review." The Commission then stated:

The only exception to this procedure is under Section 392.200 when (i) a proposed tariff is not just and not reasonable; (ii) customers do not pay the same amount for the same service given to other customers (iii) undue or unreasonable preference or advantage is given to any customer; (iv) geographic deaveraging of rates occurs; and (v) the company violates its duty to transmit without delay the messages of other telephone companies.[2] None of the exceptions apply here.

This determination was followed by what the Commission denominated its "Findings

---

2. For some reason, in clause (v), the Commission paraphrases the provisions of § 392.200.6 instead of § 392.200.5.

of Fact," which are quoted in their entirety as follows:

> Because AT & T's proposed rate increase of $1.95 applies only to a competitive service, consumers are free to obtain service from an alternate provider if they object to the rate.
>
> AT & T's proposed tariff sheets exempt low-income and low-volume users of telecommunications, which, if "discriminatory," is "reasonable discrimination" as a matter of public policy.
>
> AT & T's direct mail notice was clear that this charge would apply to any AT & T customer (with the noted exceptions) who had more than $1.00 in charges billable by AT & T. The notice also informed each customer of a toll-free number and a website where customers could learn more about the charge.

On February 14, 2002, the OPC filed, pursuant to § 386.510, a petition for writ of review in the Circuit Court of Cole County. On June 27, 2003, the circuit court entered a judgment affirming the decision of the Commission.

### Sprint's Proposed Tariff Revisions

On May 20, 2002, Sprint proposed tariff revisions to recover access charges which Sprint was required to pay to local exchange carriers in Missouri for the use of the local network in completing an in-state long distance call. The proposed tariff revisions included the following surcharge:

*In–State Access Recovery Charge*

The In–State Access Recovery charge will be assessed monthly on all Dial 1 Sprint accounts for which local service is not provided by a Sprint company.

.1 *Monthly Recurring Charge* $1.99

At approximately the same time, Sprint mailed a notice of the proposed surcharge to the affected customers, who are all Missouri "Dial 1 Sprint" customers presubscribed for long distance toll service, and who do not have local services provided by a Sprint company. The notice stated:

> For customers residing in the state of Missouri, your Sprint long-distance invoice will increase by $1.99, due to a new monthly charge called In–State Access Recovery. This charge is based on the access charges that Sprint pays to the local phone company to utilize its local phone lines. This charge will be applied beginning on invoices dated July, 2002.

On June 13, 2002, the OPC filed a motion asking the Commission to enter an order suspending Sprint's proposed tariff revisions, and to hold evidentiary and public hearings on the matter. The motion alleged that the proposed surcharge violated § 392.200 because each affected customer would pay "the same amount no matter how many toll calls are made and no matter how long the calls are." Consequently, the motion claimed, "[t]he charge results in an unreasonable and prejudicial disadvantage for a class of Sprint presubscribed customers that have a low amount or no toll calling while customers with considerable toll calling are given an undue and unreasonable preference and advantage by paying the same amount per month." The motion also alleged that the proposed surcharge violated § 254(g) of the Federal Telecommunications Act of 1996, in that it would require Sprint customers in Missouri to pay more per minute for toll service than Sprint customers in another state.

The Commission suspended the tariff until July 31, 2002. On June 21, 2002, the Staff filed a response to the motion, recommending that the Commission approve the proposed tariff revisions. In support of its recommendation, the Staff noted that Sprint's customers "may choose to switch

long distance carriers and, thereby, allow the competitive marketplace to regulate the charges." Sprint filed its response to the OPC's motion on the same date, arguing that its proposed tariff revisions should be approved for the same reasons that AT & T's proposed tariff revisions were approved.

On July 23, 2002, the Commission entered an order approving the proposed tariff effective July 31, 2002. The order contained no findings of fact denominated as such, but included the following statements:

> The Commission has reviewed all the relevant factors surrounding this proposed charge including Sprint's tariff submission, the motion to suspend, Staff's recommendation, and the various other responsive pleadings. Because Sprint's proposed rate increase of $1.99 applies only to a competitive service, consumers are free to obtain service from an alternate provider if they object to the rate. Considering the competitive climate in which this service is offered, the Commission finds that the allowing full and fair competition to substitute as regulation will ensure that consumers pay only reasonable rates. Staff stated that it found Sprint's exception of the charge for Sprint's local service customers to be a concern, however, Staff did not believe Sprint should be treated differently than other carriers similarly situated. Staff also notes that monthly recurring charges and surcharges are common in the telecommunications industry. Sprint cites several instances where "the Commission has routinely approved ... [or allowed to become effective] interexchange tariffs that offer discounts or that waive various charges to customers who purchase local services from the same company." Thus, the Commission finds that this charge does not provide any "undue or unreasonable

preference or advantage" to any customer.

On September 10, 2002, the OPC filed, pursuant to § 386.510, a petition for writ of review in the Circuit Court of Cole County. On June 27, 2003, the circuit court entered a judgment affirming the decision of the Commission.

### MCI's Proposed Tariff Revisions

On August 2, 2002, MCI submitted proposed tariff revisions, which contained the following surcharge:

*Instate Access Recovery Fee*

MCI® is charged to originate and terminate it's instate log distance calls over other companies [sic] networks. MCI will assess a monthly fee to residential customer [sic] to recover these charges. Customers will be exempt from this charge during any monthly billing period where their MCI spending is less than $1.00.

*Residential Customers*

An Instate Access Recovery Fee of $1.95 per account per month will be applied to invoices of customers of the following residential services under this tariff.

Option A (Dial One/Direct Dial)

Option B (Credit Card)—etc.

MCI requested that the tariff become effective on September 3, 2002.

On August 8, 2002, the OPC filed a motion asking the Commission to enter an order suspending MCI's proposed tariff revisions, and to hold evidentiary and public hearings on the matter. The motion alleged that the proposed surcharge violated § 392.200 because the surcharge would be applied "as a flat rate without regard to the type, amount and duration of toll calls and the resultant access charges incurred by the company, if any." The motion

claimed the proposed surcharge "results in an unreasonable and prejudicial disadvantage for a class of MCI WorldCom presubscribed customers that have a low amount or no toll calling," and that customers "with considerable toll calling are given an undue and unreasonable preference and advantage by paying the same amount per month as those customers with low volume." The motion also alleged that the proposed surcharge violated § 254(g) of the Federal Telecommunications Act of 1996, in that the surcharge would not be levied on similarly situated customers in other states. In addition, the motion asserted that, between them, AT & T, Sprint, and MCI have over a 70% market share of residential customers in Missouri, making it difficult for those customers to switch to a competitor in order to avoid the surcharge.

On August 19, 2002, the Staff filed a response to the motion, recommending that the Commission approve the proposed tariff revision. In support of its recommendation, the Staff noted that MCI's customers "may choose to switch long distance carriers and, thereby, allow the competitive marketplace to regulate the charges." MCI also filed a response to the OPC's motion, in which it argued that its proposed surcharge was similar to AT & T's and Sprint's proposed surcharges, which were approved by the Commission, and MCI should not be treated any differently.

On August 27, 2002, the Commission entered an order approving the proposed tariff revisions effective September 3,

2002. The Commission found that MCI had complied with the technical requirements of § 392.500.2, and it determined that the proposed surcharge was just and reasonable, stating:

> Because MCI WorldCom's proposed monthly service charge of $1.95 applies only to a competitive service, consumers are free to obtain service from an alternate provider if they object to the charge. Considering the competitive climate in which this service is offered, the Commission finds that the allowing full and fair competition to substitute as regulation will ensure that consumers pay only reasonable rates. As Staff noted, monthly recurring charges and surcharges are common in the telecommunications industry and MCI WorldCom should not be treated differently than other similarly situated telecommunications companies.

On October 10, 2002, the OPC filed, pursuant to § 386.510, a petition for writ of review in the Circuit Court of Cole County. On August 1, 2003, the circuit court entered a judgment affirming the decision of the Commission.

This appeal followed.

## I.

Before addressing the OPC's Points Relied On, a brief discussion of the Commission's regulation of telecommunication companies is necessary.

■ Pursuant to § 392.361.1,[3] the Companies sought and received classification as

**3.** Section 392.361.1 provides:
   A telecommunications company may file with the commission a petition to be classified as a competitive telecommunications company or a transitionally competitive telecommunications company under this section, or to have services classified as competitive or transitionally competitive telecommunications services under this section. The office of public counsel may initiate classification proceedings by petition. The commission may initiate classification proceedings on its own motion. The commission may require all telecommunications companies potentially affected by a

"competitive telecommunication companies," which is not challenged on appeal. With respect to such companies, the Commission, pursuant to § 392.361.5:

> may ... suspend or modify the application of its rules or the application of any statutory provision contained in sections 392.200 to 392.340, except as provided in section 392.390. The commission may suspend different requirements for different telecommunications companies, if such different treatment is reasonable and not detrimental to the public interest.

The use of the word "may" in § 392.361.5 indicates that the Commission has the discretion to choose whether to suspend the specified rules and statutes in a particular proceeding. *Pfefer v. Bd. of Police Comm'rs,* 654 S.W.2d 124, 128 (Mo.App. 1983).

■■■ Although authorizing the Commission to suspend or modify the application of any statutory provision with respect to a competitive telecommunication company, § 392.361.5 makes it clear that the Commission may not suspend the application of § 392.390, which provides, in pertinent part:

> Except as provided in subsection 1 of section 392.520, a telecommunications company shall at a minimum:
>
> (5) Be subject to the provisions of subsections 2, 3, 4 and 5 of section 392.200, so far as such provisions are applicable to a telecommunications company.

Thus, even if a telecommunications company is classified as competitive pursuant to § 392.361.1, it is still subject to the provisions of § 392.200.2, .3, .4, and .5. Thus, pursuant to § 392.200.2, such companies may not charge any customer more or less for any service than it charges any other

classification proceeding to appear as par-

customer; pursuant to § 392.200.3, such companies may not give any undue or unreasonable preference to any customer, or subject any customer to any undue or unreasonable prejudice or disadvantage; pursuant to § 392.200.4, such companies may not discriminate based on geographic area or other market segmentation; and, pursuant to § 392.200.5, such companies may not charge a different price for equivalent service over equivalent distances without filing the appropriate tariff. It is, of course, significant that § 392.390.5 omits any reference to § 392.200.1, which requires that all of a telecommunications company's charges must be "just and reasonable." The express mention of one thing in a statute implies exclusion of another. *Mo. Bd. of Registration for the Healing Arts v. Levine,* 808 S.W.2d 440, 443 (Mo.App.1991). Thus, it appears that the legislature intended that it was within the discretion of the Commission to decide whether to apply to a competitive telecommunication company, in a given proceeding, the requirements of § 392.200.1.

With the foregoing to guide us, we now turn to the appellant's Points Relied On. And, because Point II is dispositive of this appeal, we address it alone.

In Point II, the OPC claims that the Commission erred in approving the proposed tariff revisions requested by the Companies because its decision violated § 392.200 in that no reasonable justification was shown by the Companies for the disparate treatment of similarly situated customers with respect to the surcharges. Specifically, the OPC claims that there was nothing in the record to justify assessing low-volume customers the same surcharges as high-volume customers, applying the surcharges to residential customers only, and exempting the carriers' local

ties for a determination of their interests.

service customers from the surcharges. Before the Commission, the OPC argued that this disparate treatment was a discriminatory act in violation of § 392.200.2 and .3. On appeal, the OPC argues that the:

> PSC's orders did not disclose any valid justification or basis for allowing the carriers to single out these low volume toll customers and residential customers for discriminatory treatment and extra charges. There was no justification for the preferential treatment of the carriers' local exchange customers. The orders do not state how and in what manner this discriminatory method of assessing a cost recovery charge for access fees are [sic] reasonable and proper and in the public interest.

Essentially, the OPC is arguing that the PSC's orders approving the Companies requested surcharges contained cursory findings which did not articulate any facts from which the Commission reached its ultimate conclusion that there was a reasonable justification for the disparate treatment of residential, low volume, and rural customers.

■ Whether a case is contested or uncontested, this court has held that the requirements of §§ 386.420.2 and 536.090 apply such that the Commission's decision or order is required to be in writing, including findings of fact and conclusions of law. *State ex rel. Coffman v. Pub. Serv. Comm'n*, 121 S.W.3d 534, 542 (Mo.App. 2003); *AT & T Communications of the Southwest, Inc. v. Pub. Serv. Comm'n*, 62 S.W.3d 545, 546–47 (Mo.App.2001); *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n*, 24 S.W.3d 243, 244–45 (Mo. App.2000). The Commission's findings cannot be "completely conclusory." *AT & T*, 62 S.W.3d at 546; *State ex rel. Noranda Aluminum*, 24 S.W.3d at 244–45. They "must articulate the 'basic facts from

which [the Commission] reached its ultimate conclusion' regarding disposition of the case. While detailed factual summaries are not needed there, nevertheless, must be sufficient findings of fact to determine how the controlling issues were decided by the Commission." *State ex rel. Coffman*, 121 S.W.3d at 542 (citations omitted).

■ Neither the Commission's July 23, 2002 order approving Sprint's proposed tariff revisions nor its August 27, 2002 order approving MCI's proposed tariff revisions contain findings of fact. Rather, the orders simply contain a general discussion of the parties' positions and a brief explanation of which position the Commission deemed correct. This does not satisfy the requirement that the Commission articulate the basic facts from which it reached its decision. *State ex rel. Noranda Aluminum*, 24 S.W.3d at 245–47.

■ As to the Commission's December 13, 2001 order approving AT & T's proposed tariff revisions, the Commission found:

> Because AT & T's proposed rate increase of $1.95 applies only to a competitive service, consumers are free to obtain service from an alternate provider if they object to the rate.
>
> AT & T's proposed tariff sheets exempt low-income and low-volume users of telecommunications, which, if "discriminatory," is "reasonable discrimination" as a matter of public policy.
>
> AT & T's direct mail notice was clear that this charge would apply to any AT & T customer (with the noted exceptions) who had more than $1.00 in charges billable by AT & T. The notice also informed each customer of a toll-free number and a website where customers could learn more about the charge.

The Commission also found, with respect to § 392.200, that:

> [t]he only exception to [the statutory scheme that proposed tariff revisions submitted by competitive telecommunications companies will be approved by the Commission if they comply with the provisions of § 392.500] is under Section 392.200 when (i) a proposed tariff is not just and not reasonable; (ii) customers do not pay the same amount for the same service given to other customers (iii) undue or unreasonable preference or advantage is given to any customer; (iv) geographic deaveraging of rates occurs; and (v) the company violates its duty to transmit without delay the messages of other telephone companies. None of the exceptions apply here.

Any fair reading of the Commission's order reveals that it does not articulate, as required, the factual basis for its conclusion that the alleged disparate treatment of residential, low volume, and rural customers was not a violation of § 392.200.2 and .3 as claimed by the OPC.

The Commission's orders also fail to articulate the factual basis for the Commission's conclusion that the proposed tariff revisions are just and reasonable, as the OPC claims in Point V. As we explained, *supra,* § 392.390.5 leaves it to the Commission to decide, in its discretion, whether to impose, in a given proceeding, the "just and reasonable" requirements of § 392.200.1 on a telephone company which has been classified as competitive for the purposes of § 392.361. In this case, it is clear from the Commission's December 13, 2001 order approving AT & T's proposed tariff revisions, in which the Commission determined that the proposed tariff revisions did not run afoul of any of the provisions of § 392.200, that the Commission considered not only the OPC's claims that the proposed tariff revisions were discrimi-

natory in violation of § 392.200.2 and .3, but also, in its discretion, the OPC's claim that the proposed tariff revisions were not just and reasonable, in violation of § 392.200.1. The Commission's conclusion that the proposed tariff revisions were just and reasonable was not accompanied by sufficiently detailed findings to permit this court to conduct a meaningful review.

For the foregoing reasons, we find that the Commission, in approving the surcharges sought by the Companies, failed to make sufficient findings of fact and conclusions of law to justify its orders. As such, we must reverse and remand for the Commission to make findings of fact and conclusions of law as required. *Century State Bank v. State Banking Bd. of Mo.,* 523 S.W.2d 856, 861 (Mo.App.1975). On remand, the Commission may reopen the case and hear additional evidence, if a majority of the Commission desires to do so. *Id.* Otherwise, it may make the required findings of fact and conclusions of law based on the evidence already presented. *Id.*

## Conclusion

The Commission's orders approving the Companies' proposed tariff revisions are reversed, and the cause is remanded to the Commission with directions to make findings of fact and conclusions of law in accordance with this opinion.

LOWENSTEIN, P.J., and HOWARD, J., concur.