STATE of Missouri, ex rel. PUBLIC COUNSEL, Appellant,

v.

PUBLIC SERVICE COMMISSION OF the STATE of Missouri, et al., Respondents.

No. WD 68333.

Missouri Court of Appeals, Western District.

March 18, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 29, 2008.

Application for Transfer Denied Aug. 26, 2008.

Michael F. Dandino, Jefferson City, for appellant.

Jennifer L. Heintz, Jefferson City, MO, for Respondent, Public Service.

Kenneth A. Schifman, Overland Park, KS, for Respondent, Sprint.

Leo J. Bub, St. Louis, MO, for Respondent, AT&T.

Carl J. Lumley, St. Louis, MO, for Respondent, MCI.

Before VICTOR C. HOWARD, C.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

AT & T Communications of the Southwest, Inc. (AT & T), Sprint Communications Company, L.P. (Sprint), MCI World-Com Communications, Inc. (MCI), and Teleconnect Long Distance Services and Systems Company (Teleconnect)[1] filed tariffs with the Public Service Commission seeking to implement or increase instate access recovery surcharges for long distance toll service for certain customers in Missouri. The Office of the Public Counsel opposed the proposed tariffs, but the Commission approved the tariffs. Public Counsel appeals and asserts that the Commission erred in concluding that (1) it was unnecessary to determine whether the instate access recovery surcharges were just and reasonable pursuant to section 392.200.1, RSMo Cum.Supp.2007; (2) the instate access recovery surcharges were lawful and reasonable and not discriminatory under sections 386.200.2 and 386.200.3, RSMo Cum.Supp.2007; and (3) the instate access recovery surcharges were lawful and reasonable and not a violation of the Federal Telecommunications Act of 1996. Public Counsel also complains that the Commission's Report and Order approving the tariffs contained in-

1. When referring to these telecommunications companies as a group we will refer to them as "companies."

sufficient findings of fact and conclusions of law to allow for meaningful judicial review. We affirm.

This case involves five separate tariffs: one filed by AT & T, one filed by Sprint, two filed by MCI, and one filed by Teleconnect. The specifics of the tariffs are set out below.[2]

### AT & T's Tariff

AT & T is a competitive interexchange and local exchange telecommunications company authorized to provide telecommunications services in Missouri. All the services that AT & T offers in Missouri are classified as competitive except for exchange access service. On August 14, 2001, AT & T filed a proposed tariff with the Commission, which established a monthly service charge of $1.95 per month for all AT & T customers who were pre-subscribed to AT & T for interLATA service.[3] The monthly service charge applied if a customer had one dollar or more of billable charges and credits on their bill, including, but not limited to, monthly recurring charges, minimum usage, or single bill fee charges. Customers making less than one dollar of long distance calls a month and customers of AT & T Long Distance Lifeline Program, AT & T Federal Price Protection Plan, AT & T Digital Phone Service, AT & T Digital Broadband, and AT & T Local Service were exempt from the charge. AT & T informed its customers who were pre-subscribed for inter-LATA long distance that it was imposing the surcharge on them to recover access charges that it was required to pay to local exchange carriers in Missouri for the use of the local network in completing instate long distance calls. After initially suspending the tariff, the Commission approved the tariff on December 13, 2001. Public Counsel sought a rehearing of the matter, which the Commission denied.

Subsequently, in a tariff filed November 15, 2004, AT & T increased its instate connection fee to $2.49 per month and applied the fee to all long distance customers except those in the AT & T Lifeline Program and those who have AT & T local phone service. That tariff was not challenged and went into effect on December 15, 2004.

### Sprint's Tariff

Sprint is a competitive interexchange and local exchange telecommunications company authorized to provide telecommunications services in Missouri. On May 30, 2002, Sprint filed a proposed tariff with the Commission to recover access charges, which Sprint was required to pay to local exchange carriers in Missouri for the use of the local network in completing an instate long distance call. The instate access recovery charge was set at $1.99 per month and applied to all "Dial 1" Sprint accounts that did not have local service with a Sprint company. After initially suspending the tariff, the Commission approved the tariff on July 23, 2002. Public Counsel sought a rehearing of the matter, which the Commission denied.

---

2. In regard to three of the tariffs filed by AT & T, MCI, and Sprint, this is the second time these tariffs come before this court. *State ex rel. Acting Pub. Counsel Coffman v. Pub. Serv. Comm'n,* 150 S.W.3d 92 (Mo.App.2004). In that case, this court explained some of the history concerning these tariffs. We refer the reader to that case for a fuller factual discussion concerning those tariffs.

3. Section 386.020(25), RSMo Cum.Supp. 2007, defines "InterLATA" as "interexchange telecommunications service between points in different local access and transportation areas[.]"

## MCI's and Teleconnect's Tariffs

MCI is a competitive interexchange and local exchange telecommunications company authorized to provide telecommunications services in Missouri. Teleconnect, a subsidiary of MCI, is also a competitive interexchange telecommunications company authorized to provide telecommunications services in Missouri. On August 2, 2002, MCI filed a proposed tariff with the Commission creating an instate access recovery fee to recover access fees charged by local companies' networks for instate long distance calls made by MCI customers. The fee of $1.95 applied to all residential customers spending more than one dollar during any monthly billing period. MCI, however, did not assess the fee on customers who obtained local telephone service from MCI. After initially suspending the tariff, the Commission approved the tariff on August 27, 2002. Public Counsel sought a rehearing of the matter, which the Commission denied. Subsequently, Teleconnect filed a tariff to implement an instate access recovery fee. That tariff was not challenged and went into effect on December 1, 2002.

In the spring of 2004, MCI and Teleconnect filed proposed tariffs with the Commission seeking to increase their instate access recovery fees by one dollar per month. After initially suspending the tariff, the Commission approved the tariffs on July 22, 2004. Public Counsel sought a rehearing of the matter, which the Commission denied.

## Appeals of Tariffs

Public Counsel filed several motions asking the Commission to suspend the tariffs, to conduct evidentiary hearings, and to ultimately reject the tariffs. The Commission denied Public Counsel's motions to suspend the tariffs and allowed the instate access recovery charge tariffs to go into effect.

After the Commission denied Public Counsel's motions for rehearing, Public Counsel filed a petition for a writ of review of the Commission's decisions with the Circuit Court of Cole County. Three of the tariff cases, which involved AT & T, MCI, and Sprint, were consolidated and affirmed by the circuit court. Public Counsel appealed to this court, and we reversed the Commission's orders approving the proposed tariffs. *State ex rel. Acting Pub. Counsel Coffman v. Pub. Serv. Comm'n,* 150 S.W.3d 92 (Mo.App.2004). In reversing the Commission's decision to approve the tariffs, this court found that the Commission had failed to make sufficient findings of fact and conclusions of law to justify its orders. *Id.* at 102. We, therefore, remanded and directed the Commission to make findings of fact and conclusions of law. *Id.* Further, we indicated that on remand the Commission could reopen the case and hear additional evidence or it could make the required findings of fact and conclusions of law based on the evidence already presented. *Id.*

Public Counsel also filed a petition for a writ of review of the two remaining tariff cases, which involved MCI and Teleconnect, with the Circuit Court of Cole County. Those two cases were pending before the circuit court when this court issued its opinion involving the three other tariff cases. Thereafter, by stipulation of the parties, the circuit court ordered the two remaining tariff cases to be remanded to the Commission for further consideration.

## Remand Before the Commission

On remand, the Commission consolidated the five tariff cases and established a procedural schedule for the submission of additional evidence in the form of pre-filed testimony. Witnesses on behalf of each of

the parties submitted testimony. The parties stipulated that all submitted testimony should be admitted into evidence, and they also agreed to waive their right to cross-examine the witnesses that offered testimony. The Commission then made findings of fact and conclusion of law and issued its Report and Order denying Public Counsel's request to reject the tariffs. Public Counsel sought a rehearing, which the Commission denied.

Public Counsel thereafter filed a petition for a writ of review with the Circuit Court of Cole County. The circuit court found that the Commission's order was lawful and reasonable, and Public Counsel appeals.

### Review of Noncontested Cases

█ Before addressing the merits of this action, a discussion is necessary about the standard for reviewing noncontested cases and about our decision to remand this case to the Commission to make findings of fact and conclusions of law in the initial appeal involving three of the tariffs. *State ex rel. Acting Pub. Counsel Coffman*, 150 S.W.3d at 92. Section 386.510, RSMo 2000, provides the exclusive procedure for judicial review of all orders of the Public Service Commission, including orders involving noncontested cases. *State ex rel. Pub. Counsel v. Pub. Serv. Comm'n*, 210 S.W.3d 344, 350 (Mo.App.2006); *see also State ex rel. AG Processing, Inc. v. Pub. Serv. Comm'n*, 120 S.W.3d 732, 735 (Mo. banc 2003), and *State ex rel. Atmos Energy Corp. v. Pub. Serv. Comm'n*, 103 S.W.3d 753, 758 (Mo. banc 2003). Section 386.510 provides:

Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the circuit court of the county where the hearing was held or in which the commission has its principal office for a writ of certiorari or review (herein referred to as a writ of review) for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined.... No new or additional evidence may be introduced upon the hearing in the circuit court but the cause shall be heard by the court without the intervention of a jury on the evidence and exhibits introduced before the commission and certified to by it. The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceedings. Upon the hearing the circuit court shall enter judgment either affirming or setting aside the order of the commission under review. In case the order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and rejected, and enter a new order based upon the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action. No court in this state, except the circuit courts to the extent herein specified and the supreme court or the court of appeals on appeal, shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties. The circuit courts of this state shall always be deemed open for the trial of suits brought to review the orders and decisions of the commission as provided in the public service com-

mission law and the same shall be tried and determined as suits in equity.

This provision applies to contested cases, noncontested cases, and challenges to the Commission's rules. *State ex rel. Pub. Counsel,* 210 S.W.3d at 350.

Moreover, the legislature made it clear that section 386.510 is the exclusive procedure for review by stating emphatically in section 386.515, RSMo Cum.Supp.2007, that "the review procedure provided for in section 386.510[is] exclusive" to any other procedure. No distinction was made by the legislature in section 386.515 between contested or noncontested cases. *State ex rel. Pub. Counsel,* 210 S.W.3d at 351. Assuming, therefore, that "an applicant has filed an application for a rehearing with the commission and that the commission has ruled on the application for a rehearing," the applicant may file a petition for a writ of certiorari or review with the circuit court " 'for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined.' " *Id.* (quoting § 386.510).

■ In *State ex rel. Public Counsel,* this court determined, however, that, in an uncontested case, judicial review "probes only the lawfulness of an agency's order without consideration of its reasonableness and without need for review of competent and substantial evidence." *Id.* at 354. This is so because we cannot determine the reasonableness of the Commission's decision in a noncontested case because the Commission has not received competent and substantial evidence from which to make findings of fact. *Id.* at 353. As this court noted in *State ex rel. Public Counsel:*

"In a noncontested case . . ., the administrative body acts on discretion or on evidence not formally adduced and preserved." *Phipps v. School District of*

*Kansas City,* 645 S.W.2d 91, 94–95 (Mo. App.1982). Given the nature of a noncontested case, requiring a showing that an agency's decision is supported by competent and substantial evidence would be "inherently contradictory." I Mo. ADMINISTRATIVE LAW, *Public Service Commission,* Section 12.30 (Mo. Bar 3rd ed.2000). This is because, in noncontested cases, "there is no record from the administrative body." *State ex rel. Fortney v. Joiner,* 797 S.W.2d 848, 852 (Mo.App.1990).

*Id.* The Commission, therefore, in a noncontested case is not required to make findings of fact to allow for meaningful judicial review. Indeed, this court in *State ex rel. Public Counsel,* overruled our holding in this case in the first appeal wherein we held that " '[w]hether a case is contested or uncontested, . . . the Commission's decision or order is required to be in writing, including findings of fact and conclusions of law.' " *Id.* at. 355 n. 8 (quoting *State ex rel. Acting Pub. Counsel Coffman,* 150 S.W.3d at 101).

The parties do not dispute that the proceedings before the Commission involving the tariffs at issue were noncontested cases. We, therefore, erred in remanding this case to the Commission to make findings of fact in this case because the tariffs at issue involved noncontested cases. Because they were noncontested cases, "the commission did not have competent and substantial evidence from which to make its findings of fact, and, because we are not required to determine the reasonableness of the commission's order, we unnecessarily burdened the commission with an obligation to make findings of fact." *Id.* at 355. To the extent, therefore, that Public Counsel requests that we remand this case again because of the Commission's failure to make adequate findings of fact, we decline the request.

In noncontested cases, we judge only whether or not the Commission's order was lawful. " 'In determining whether the Commission's order was lawful, we ask only whether the order and decision was authorized by statute. We do not defer to the Commission on this issue, but instead review that question independently.' " *Id.* at 353 (citations omitted).

### Applicability of Section 392.200.1

Public Counsel asserts that the Commission's Report and Order approving the tariffs is unlawful because the Commission did not determine whether or not the instate access recovery surcharges were "just and reasonable" pursuant to section 392.200.1. Section 392.200.1 provides:

> Every telecommunications company shall furnish and provide with respect to its business such instrumentalities and facilities as shall be adequate and in all respects just and reasonable. All charges made and demanded by any telecommunications company for any service rendered or to be rendered in connection therewith shall be just and reasonable and not more than allowed by law or by order or decision of the commission. Every unjust or unreasonable charge made or demanded for any such service or in connection therewith or in excess of that allowed by law or by order or decision of the commission is prohibited and declared to be unlawful.

AT & T, Sprint, MCI, and Teleconnect are telecommunications companies within the meaning of section 386.020(51), RSMo Cum.Supp.2007. These companies are also competitive telecommunications companies within the meaning of section 386.020(9), RSMo Cum.Supp.2007, having been granted this classification by the Commission pursuant to section 392.361, RSMo 2000. Moreover, the surcharges at issue in this case were filed as competitive rate changes under section 392.500, RSMo.

In 2005, the General Assembly amended section 392.500, RSMo Cum.Supp.2007, which concerns decreases and increases in rates, charges, classifications, or tariffs for competitive telecommunication services. Section 392.500 says:

> *Except as provided in subsections 2 to 5 of section 392.200,*[4] proposed changes in rates or charges, or any classification or tariff provision affecting rates or charges, for any competitive telecommunications service, shall be treated pursuant to this section as follows:
>
> (1) Any proposed decrease in rates or charges, or proposed change in any classification or tariff resulting in a decrease in rates or charges, for any competitive telecommunications service shall be permitted only upon the filing of the proposed rate, charge, classification or tariff after one day's notice to the commission; and
>
> (2) Any proposed increase in rates or charges, or proposed change in any classification or tariff resulting in an increase in rates or charges, for any competitive telecommunications service shall be permitted ten days after the filing of the proposed rate, charge, classification or tariff and upon notice to all potentially affected customers through a notice in each such customer's bill at least ten days prior to the date for implementation of such increase or change, or, where such customers are not billed, by an equivalent means of prior notice.[5]

Prior to 2005, section 392.500 allowed the Commission to review and determine

---

4. Prior to 2005, this part of the statute read, "Except as provided in section 392.200[.]" § 392.500, RSMo 2000.

5. We added the emphasis.

whether or not the instate access recovery surcharges at issue were just and reasonable. The amendment of section 392.500 in 2005, however, abrogated the Commission's authority to review the instate access recovery surcharges for justness and reasonableness in this case. In amending section 392.500, the General Assembly removed the general reference to section 392.200 and specifically stated that only subsections two through five of section 392.200 shall apply to changes in tariffs for competitive telecommunications services. By omitting subsection one of section 392.200 from the list of subsections to be applied, the General Assembly has made it clear that section 392.200.1 no longer applies to competitive tariff filings such as those at issue in this case.

Despite the General Assembly's clear language in section 392.500, Public Counsel argues that the amendment of section 392.500 does not take away the Commission's responsibility to ensure just and reasonable utility service for ratepayers. Public Counsel asserts that sections 392.185(4) and (6), RSMo 2000, set forth the General Assembly's intent that the Commission ensure that ratepayers are protected even in a competitive regulatory environment, that rates are consistent with the public interest, and that customers pay only reasonable charges for telecommunications services. Public Counsel contends that the amendment to section 392.500 does not invalidate the Commission's jurisdiction to review other aspects of competitive telecommunications services, operations, and practices for lawfulness and reasonableness. Public Counsel argues, "Although Section 392.500, RSMo provides a procedure for rate changes for competitive services, even as amended it does not supersede the [Commission's] duty to supervise telephone carriers." In short, Public Counsel does not share the legislature's belief that competition among telecommunication companies will result in reasonable rates without supervision by the Commission.

Public Counsel's arguments, however, would render the amendment to section 392.500 meaningless. When the General Assembly amends a statute, we must presume that its intent was to effect some change in the existing law. *Harding v. Lohman,* 27 S.W.3d 820, 824 (Mo.App. 2000). "The Legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent." *Id.* We, therefore, "should never construe a statute in a manner that would moot the legislative changes, because the legislature is never presumed to have committed a useless act." *State v. Joos,* 218 S.W.3d 543, 548–49 (Mo.App.2007). "To amend a statute and accomplish nothing from the amendment would be a meaningless act." *Harding,* 27 S.W.3d at 824.

We also acknowledge that, when we remanded this case to the Commission, we found that the Commission retained the discretion to determine "whether to impose, in a given proceeding, the 'just and reasonable' requirements of § 392.200.1 on a telephone company which has been classified as competitive for the purposes of § 392.361." *State ex rel. Acting Pub. Counsel Coffman,* 150 S.W.3d at 102. The amendment of section 392.500 occurred after our decision to remand. The Commission, however, does not have the authority to retroactively correct rates or to order refunds. *State ex rel. City of Joplin v. Pub. Serv. Comm'n,* 186 S.W.3d 290, 297 (Mo.App.2005). "Nor can the Commission take into account overpayments when fashioning prospective rates." *Id.* We, therefore, apply the current version of section 392.500 in this case because the Commission could grant no remedy for

rates that were collected prior to the change in the law. Pursuant to section 392.500, the Commission's decision not to review the rate charges by these competitive telecommunications companies under the "just and reasonable" provision of section 392.200.1 was lawful.

### Anti–Discrimination Provisions under Sections 392.200.2 and 392.200.3

■ Public Counsel also asserts that the Commission's Report and Order approving the tariffs is unlawful because the instate access recovery surcharges are discriminatory pursuant to sections 392.200.2 and .3. These sections provide:

2. No telecommunications company shall directly or indirectly or by any special rate, rebate, drawback or other device or method charge, demand, collect or receive from any person or corporation a greater or less compensation for any service rendered or to be rendered with respect to telecommunications or in connection therewith, except as authorized in this chapter, than it charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect to telecommunications under the same or substantially the same circumstances and conditions. Promotional programs for telecommunications services may be offered by telecommunications companies for periods of time so long as the offer is otherwise consistent with the provisions of this chapter and approved by the commission. Neither this subsection nor subsection 3 of this section shall be construed to prohibit an economy rate telephone service offering. This section and section 392.220 to the contrary notwithstanding, the commission is authorized to approve tariffs filed by local exchange telecommunications companies which elect to provide reduced charges for residential telecom-

munications connection services pursuant to the lifeline connection assistance plan as promulgated by the federal communications commission. Eligible subscribers for such connection services shall be those as defined by participating local exchange telecommunications company tariffs.

3. No telecommunications company shall make or give any undue or unreasonable preference or advantage to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever except that telecommunications messages may be classified into such classes as are just and reasonable, and different rates may be charged for the different classes of messages.

Public Counsel asserts that the instate access recovery surcharges at issue in this case are discriminatory because they apply to residential customers only and not to business customers. The Commission concluded that the application of the surcharges to residential customers and not to business customers was justified by the differences in the cost of providing long distance service to the two customer classes and by the fact that telecommunication companies have less of a need to impose a surcharge on business customers to recover access fees because business customers generally pay more per minute for their long distance calls. Indeed, section 392.200.3 specifically permits telecommunication companies to charge different rates for services for different classes. The Commission found that residential and business service classes have long been recognized as separate classes of customers, and the Public Counsel even acknowledged that business and residential customers are distinct classes of customers. Public Counsel's contention that the sur-

charges were discriminatory because they applied to residential customers only is without merit.

■ Public Counsel also contends that the instate access recovery surcharges are discriminatory because both low volume and high volume toll customers are charged the same fixed monthly surcharge. The Commission correctly concluded, however, that "there is no reason to believe that this flat rate is any more discriminatory than any other flat rate that is commonly charged by a telecommunications company for other services."[6] As the Commission recognized, "A customer that makes few calls and as a result pays more per minute of service in one month may well make more calls the next month and as a result pay less per minute for those services." No fixed class of low volume or high volume customers exists because customers can change their usage at any time. Consequently, the companies in this case are not giving any undue or unreasonable preference or advantage to high volume customers and imposing an unreasonable prejudice and disadvantage on low volume customers. Indeed, section 392.200.5, RSMo Cum.Supp.2007, even allows telecommunications companies to have "reasonable price discounts based on the volume of service provided, so long as such discounts are nondiscriminatory and offered under the same rates, terms, and conditions throughout a telecommunications company's certificated or service area."

■ Public Counsel also contends that the instate access recovery surcharges are discriminatory because they exempt local service customers even though local service customers cause the carriers to incur costs and because the local service exemp-

tion is not generally available to rural areas. Public Counsel, however, even acknowledges that the companies' exemption for local service customers may be a reasonable business decision and based upon sound business practice. This is true because, when a company is a customer's local service provider, the company does not incur the same switched access costs as it does as a stand-alone interexchange service provider. Such a cost differential supports the exemption of local service customers from the payment of the surcharge.

Moreover, section 392.200.12, RSMo Cum.Supp.2007, makes it clear that subsection 2 and 3 of section 392.200 do not apply to packages of services. Section 392.200.12 says:

Packages of services may be offered on an equal basis by incumbent and alternative local exchange companies and shall not be subject to regulation under section 392.240 or 392.245, nor shall packages of services be subject to the provisions of subsections 1 through 5 of this section, provided that each telecommunications service included in a package is available apart from the package of services and still subject to regulation under section 392.240 or 392.245. For the purposes of this subsection, a "package of services" includes more than one telecommunications service or one or more telecommunications service combined with one or more non-telecommunications service.

The companies in this case have exempted from the surcharge those customers who buy the package of local and long distance services. Such package pricing is not subject to sections 392.200.2 and .3's anti-discrimination provisions pursuant to section 392.200.12.

6. For example, a majority of telecommunications customers pay a flat rate for basic local service even though usage of the local service varies greatly by customers.

 Moreover, to the extent that Public Counsel contends that the surcharges discriminate against rural long distance customers, we are not persuaded. Just as the Commission concluded, nothing in the tariffs explicitly favors urban customers or excludes rural customers. The Commission correctly found, "Any exclusion of rural consumers that might result from a decreased ability to obtain local service from these providers is merely incidental and is not a sound basis for rejecting these tariffs." Consequently, the companies in this case are not giving any undue or unreasonable preference or advantage to urban customers or imposing an unreasonable prejudice and disadvantage on rural customers.

We conclude that the instate access recovery surcharges are not unduly or unreasonably discriminatory pursuant to sections 392.200.2 and .3. The Commission's Report and Order approving the tariffs, therefore, is not unlawful.

### Federal Telecommunications Act of 1996

 Finally, Public Counsel contends that the Commission's Report and Order approving the tariffs is unlawful because the instate access recovery surcharges violate section 254(g) of the Federal Telecommunications Act of 1996. That section of the Act directs the Federal Communications Commission to establish rules that "require that a provider of interstate interexchange telecommunications services shall provide such services to its subscribers in each State at rates no higher than the rates charged to its subscribers in any other State." 47 USC 254(g). The rates at issue in this case apply to intrastate service alone and have no application to interstate services. Section 254(g) of the Federal Telecommunications Act of 1996 is, therefore, not applicable to this case.

### Conclusion

The Commission's Report and Order approving the tariffs filed by AT & T, Sprint, MCI, and Teleconnect is lawful. We affirm.

All concur.