**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert Neil JOOS, Defendant–Appellant.**

No. 27323.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 26, 2007.

Motion for Rehearing or Transfer
Denied Feb. 16, 2007.

Application for Transfer Denied
May 1, 2007.

Irene Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel N. McPherson, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

A jury convicted Robert Joos ("Defendant") of the class D felonies of operating a motor vehicle without a proper license, in violation of Section 302.020,[1] and resisting arrest by fleeing, in violation of Section 575.150, RSMo Cum.Supp. (2004). On appeal, Defendant contends that the trial court erred by not allowing him to offer evidence and testimony regarding his good-faith belief in the lawfulness of his conduct in driving without a license. Defendant also challenges the sufficiency of the evidence supporting his conviction for felony resisting arrest. We affirm in part and reverse in part.

In the light most favorable to the jury's verdict, the record reveals the following. On November 14, 2004, Highway Patrol Corporal Brad Bearden ("Trooper Bearden") was driving through Powell, Missouri, when he saw an unidentified male, who he later determined to be Defendant, sitting in a truck near a closed store. As Trooper Bearden turned around to investigate, Defendant drove off. Trooper Bearden followed Defendant, and activated his lights because he could not read Defendant's license plate, and Defendant was driving in the middle of the road. When Defendant did not pull over, Trooper Bearden pursued him with both his lights and siren activated. During the pursuit, Defendant was traveling anywhere from thirty-five to fifty miles per hour, swerving at times toward the left side of the road. At one point, Defendant forced an oncoming truck to pull to the side of the road. After being pursued for eleven minutes and sev-

eral miles, Defendant reached a lane that went through the woods, stopping near a cluster of trailer homes and outbuildings, which was later determined to be his property.

As Defendant got out of the truck, Trooper Bearden drew his gun and ordered Defendant to come towards him. Defendant, who was very animated and agitated, began yelling at Trooper Bearden, telling him that he wanted witnesses so Trooper Bearden would not beat him up. Defendant also told Trooper Bearden that he did not have the authority to stop him or arrest him without a search warrant or court order.

After taking off his coat and emptying his pockets, Defendant approached Trooper Bearden, and was arrested without further incident. Defendant was then taken to jail, where Trooper Bearden discovered that Defendant did not have a driver's license and had two prior convictions for driving without a license.

Defendant was charged by amended information with operating a motor vehicle without a proper license and resisting arrest "by fleeing ... in such a manner that created a substantial risk of serious physical injury[.]" This appeal followed Defendant's conviction and sentencing.

■ In Defendant's first point on appeal, he alleges that the trial court erred in ruling that he could not offer evidence and testimony regarding his belief that only those engaged in commercial activity are required by Section 302.020 to have a valid operator's license. Defendant explains that this evidence was "essential to his defense of a good-faith belief in the lawful-

---

1. All references to statutes are to RSMo (2000) and all references to rules are to Missouri Rules of Criminal Procedure (2005), unless otherwise indicated.

ness of his conduct," as set out in Section 562.031. We disagree.

 Initially, we observe that Defendant did not include this particular claim of error in his motion for new trial, and, therefore, it is not properly preserved for appellate review.[2] Rule 29.11(d). Where an allegation of trial court error is not properly preserved for appeal, our review is discretionary and then only for plain error. *State v. Reeder*, 182 S.W.3d 569, 574 (Mo.App. E.D.2005).

> Plain error review is used sparingly and is limited to error that is evident, obvious and clear. We will only grant relief under the plain error standard when alleged errors so substantially affect a defendant's rights that a manifest injustice or a miscarriage of justice results if left uncorrected. The defendant bears the burden of proving a manifest injustice or miscarriage of justice.... [P]lain error cannot serve as the basis for granting Defendant a new trial, as requested, unless we find that the alleged error was outcome determinative.

*Id.* (internal citations and quotations omitted).

Section 562.031.2 provides in relevant part:

> A person is not relieved of criminal liability for conduct because he believes his conduct does not constitute an offense unless his belief is reasonable and
>
> . . . .
>
> (2) He acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in

(a) A statute;

(b) An opinion or order of an appellate court;

(c) An official interpretation of the statute, regulation or order defining the offense made by a public official or agency legally authorized to interpret such statute, regulation or order.

"The burden of injecting the issue of reasonable belief that conduct does not constitute an offense ... is on the defendant." Section 562.031.3.

In this case, Defendant was not allowed to present evidence regarding "why he believes the Missouri statute forbidding driving without a valid operator's license applies only to those engaged in commercial activity[.]" We rejected Defendant's interpretation of Section 302.020 in *State v. Joos*, 120 S.W.3d 778 (Mo.App. S.D.2003)(hereinafter referred to as *"Joos I "*). Including *Joos I*, this represents the third time Defendant has been convicted for driving without a license.

In *Joos I*, Defendant argued that the term "operate" as used in Section 302.020 "means 'hauling for hire,' an activity in which he was not involved when he received the citations." *Id.* at 780. In rejecting this argument, our reasoning was as follows:

> Based on our reading of these definitions [of "operate"], we do not agree with Defendant that they equate to "hauling for hire." Further, given the plain and ordinary meaning of the term as noted above, Defendant's argument that, based on the absence of a definition of the term "operate" in the statute, he was not put on notice as to what activi-

---

**2.** Defendant's motion for new trial alleges only that the trial court erred in not allowing the admission of Exhibit K, a list of legal authority "used by [ ] Defendant in determining that his actions were legal[.]" Defendant does not allege in that motion that the trial court erred in ruling that Defendant could not present testimony or evidence regarding his belief that the law prohibiting driving without a license applied only to those engaged in commercial activity.

ties would violate the statute or constitute "operate" fails.

*Id.* Given this Court's holding in *Joos I*, Defendant's belief that Section 302.020 applies only to those engaged in commercial activity cannot be based upon a reasonable reliance on an official statement of law. Therefore, the trial court did not err, plainly or otherwise, in not allowing Defendant to present evidence or testimony regarding his belief in the lawfulness of his conduct. This point is denied.

■ In his second point, Defendant argues that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence, because his conviction for felony resisting arrest was not supported by sufficient evidence.

■ "On a challenge to the sufficiency of the evidence, we will determine only whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt." *State v. Scholl*, 114 S.W.3d 304, 307 (Mo.App. E.D.2003). We accept as true all evidence favorable to the verdict, and all reasonable inferences therefrom, disregarding contrary evidence and inferences. *Id.*

Defendant was convicted of violating Section 575.150, RSMo Cum.Supp. (2004), which, at the time of Defendant's arrest, read in relevant part as follows:

1. A person commits the crime of resisting ... arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer[.]

. . . .

3. A person is presumed to be fleeing a vehicle stop if that person continues to operate a motor vehicle after that person has seen or should have seen clearly visible emergency lights or has heard or should have heard an audible signal emanating from the law enforcement vehicle pursing that person.

. . . .

5. Resisting ... an arrest for a felony is a class D felony. Resisting an arrest by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony; otherwise, resisting ... an arrest, detention or stop is a class A misdemeanor.

Defendant relies principally on *State v. Long*, 802 S.W.2d 573 (Mo.App. S.D.1991), in arguing that there was insufficient evidence supporting his conviction for *felony* resisting arrest. In *Long*, a state highway patrolman was attempting to stop the defendant for having an expired license plate, when the defendant's pickup truck began to accelerate. 802 S.W.2d at 574. The patrolman pursued the defendant as he turned onto a gravel road, activating his siren and emergency lights. *Id.* The pursuit reached speeds of sixty to sixty-five miles per hour, eventually ending when the defendant pulled into a driveway. *Id.* The patrolman arrested the defendant for driving without a valid operator's license, driving with an expired license plate, and resisting arrest by fleeing in a motor vehicle. *Id.* at 574–75. At trial, the patrolman testified that it was his initial intention to stop the pickup truck and investigate an apparent violation, and that he decided to arrest the defendant only after determin-

ing that he was actively fleeing. *Id.* at 575.

In holding that the defendant's conviction for resisting arrest was not supported by sufficient evidence, the Court explained:

> In the case before us, the sequence of events, viewed in the light most favorable to the judgment, was (a) the officer commenced pursuit of the defendant without any intent to arrest him, (b) the defendant fled from the officer, and (c) the officer formed an intent to arrest the defendant when he "determined [the defendant] was actively fleeing from me." There was no evidence at trial identifying the crime for which he intended to arrest the defendant.... The statute creates the crime of resisting arrest by flight; it does not create the crime of fleeing from a traffic stop where no arrest was intended until after flight commenced.

*Id.* at 576–77. The Court emphasized that "[t]he gravamen of the offense is resisting an arrest, not flight from a law enforcement officer." *Id.* at 575.

It is important to note that when *Long* was decided, Section 575.150 spoke only of the crime of resisting *arrest,* and made no mention of resisting a *stop* or *detention.* *See* Section 575.150, RSMo (1986). Foreshadowing the subsequent amendments to Section 575.150, the Court in *Long* explained that, "[w]hile we are sympathetic with the view that such a sequence of events might constitute a crime, we are convinced that the state failed to prove that the defendant violated [Section] 575.150." 802 S.W.2d at 576–77. Since *Long* was decided, Section 575.150 has been amended to encompass the crime of flight from a lawful stop.

As indicated above, at the time of Defendant's arrest, Section 575.150.5, RSMo Cum.Supp. (2004), provided the following,

with respect to the classification of that offense:

> Resisting ... an arrest for a felony is a class D felony. Resisting an *arrest* by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony; otherwise, resisting ... an arrest, detention or *stop* is a class A misdemeanor.

(emphasis added). Section 575.150.5 was amended again in 2005, after Defendant's arrest, and now reads as follows:

> Resisting ... an arrest for a felony is a class D felony. Resisting an *arrest, detention or stop* by fleeing in such a manner that the person fleeing creates a substantial risk of serious physical injury or death to any person is a class D felony; otherwise, resisting ... an arrest, detention or stop ... is a class A misdemeanor.

Section 575.150.5, RSMo Cum.Supp. (2005)(emphasis added). Under the 2005 amendment to Section 575.150.5, the act of "fleeing from a vehicle stop" is a class D felony, where the manner of flight creates a risk of injury or death to others. At the time of Defendant's arrest, however, fleeing a "vehicle stop" in a manner creating a risk of injury or death to others was a class A misdemeanor. As indicated earlier, Defendant was convicted of a class D felony.

When the Legislature amends a statute, it is presumed that its intent was to effect some change in the existing law. *Harding v. Lohman,* 27 S.W.3d 820, 824 (Mo.App. W.D.2000). "The Legislature is presumed to have acted with a full awareness and complete knowledge of the present state of the law, including judicial and legislative precedent." *Id.* This Court should never construe a statute in a manner which would moot the legislative changes, because the legislature is never

presumed to have committed a useless act. *Id.* "To amend a statute and accomplish nothing from the amendment would be a meaningless act." *Id.*

Therefore, despite the subsequent amendments to Section 575.150, to convict Defendant of felony resisting arrest, Trooper Bearden must have actually contemplated an arrest prior to Defendant's flight.[3] Otherwise, Defendant can only have committed the misdemeanor offense of flight from a lawful stop. *See* Section 575.150, RSMo Cum. Supp (2004). To interpret the 2004 statute in any other manner would render the 2005 amendment meaningless.

In the present case, the record shows that Trooper Bearden initially intended to stop Defendant to determine if Defendant's vehicle was properly registered and because he was driving down the middle of the road. At some point during his pursuit of Defendant, Trooper Bearden activated his siren and emergency lights. Because Defendant still would not pull over at this point, Trooper Bearden determined that Defendant was fleeing. While the pursuit lasted for eleven minutes and several miles, Trooper Bearden never testified that he intended to arrest Defendant for anything other than fleeing. It was only after the pursuit had ended that Trooper Bearden discovered Defendant did not have a driver's license.

Under *Long,* such facts are insufficient in establishing that a *felony* violation of Section 575.150 RSMo Cum.Supp. (2004), has occurred, because the record does not contain sufficient facts from which reasonable jurors could have found that Trooper Bearden was contemplating an arrest,

when Defendant began fleeing. As a result, we find that Defendant's conviction for *felony* resisting arrest is not supported by sufficient evidence.

In reaching this conclusion, we do not ignore the State's discussion of *State v. Chamberlin,* 872 S.W.2d 615 (Mo.App. W.D.1994). *Chamberlin* involved a vehicle pursuit reaching 120 miles per hour culminating in the suspect's flight on foot. 872 S.W.2d at 616. The Court found that there was sufficient evidence to support the defendant's conviction for felony resisting arrest, explaining that:

> During a suspect's flight from a law enforcement officer, the actions of the suspect may constitute a separate crime, giving rise to a reason to arrest the suspect.... In this case, when [the] defendant fled away at very dangerous and excessive speeds, [the officer] aggressively pursued him at high speeds with an obvious intention of apprehending him, with both his emergency lights and siren activated. [The defendant] continued to try to evade the officer. This case is distinguishable from ... *Long,* ... in that the jury could reasonably infer that [the defendant] at some point, at least when he fled on foot if not before, knew that the officer no longer intended a "routine stop."

*Id.* at 618–19. We find *Chamberlin* inapplicable, in that the present case does not involve a suspect fleeing on foot at the culmination of a high speed chase. The record establishes only that Defendant fled from an attempted traffic stop at speeds between thirty-five and fifty miles per hour. When Defendant reached his property, he got out of his vehicle and sub-

---

**3.** Three recent cases from the eastern district of this Court have affirmed the principal espoused in *Long,* that a felony violation of Section 575.150 "cannot occur unless a law enforcement officer actually contemplates an arrest [versus a stop]." *State v. Christian,* 184 S.W.3d 597, 603 (Mo.App. E.D.2006); *see also State v. Hunter,* 179 S.W.3d 317, 320 (Mo.App. E.D.2005); *and State v. Brooks,* 158 S.W.3d 841, 851 (Mo.App. E.D.2005).

mitted to Trooper Bearden's show of authority. Trooper Bearden's testimony establishes only that he intended to arrest Defendant for fleeing an attempted traffic stop. While such facts may establish a misdemeanor violation of Section 575.150, RSMo Cum.Supp. (2004), they are insufficient to support a conviction for felony resisting arrest under that statute. Therefore, Defendant's conviction for felony resisting arrest must be reversed. Defendant's second point is sustained.

In the event of the reversal of Defendant's conviction, the State argues that, "there is still sufficient evidence to support a conviction on the misdemeanor offense of resisting [a lawful stop by fleeing]." The State asserts that this Court should enter a conviction for the misdemeanor offense and "remand to the trial court for resentencing[.]" We disagree.

■■■■■ Where a conviction is overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense only if: (1) the evidence was sufficient for the jury to find each of the elements of the lesser offense; and (2) the jury was required to find those elements to enter conviction on the greater offense. *Brooks*, 158 S.W.3d at 852. "[T]his rule is inapplicable where, as here, the jury was not required to find all of the elements of [resisting a lawful stop by fleeing] in order to convict Defendant of felony resisting arrest." *Hunter*, 179 S.W.3d at 321.

To convict Defendant of resisting a lawful stop by fleeing, "the jury would be required to find that [Trooper Bearden] was making an investigatory stop of Defendant, Defendant knew he was making a stop, and that for the purpose of preventing the stop, resisted by fleeing from the officer." *Brooks*, 158 S.W.3d at 852 (citing MAI–CR 3d 329.61). In the present case, in order to convict Defendant of *felony*

resisting arrest, the jury was instructed to find that Trooper Bearden was making an *arrest* of Defendant, Defendant knew he was making an *arrest*, and for the purpose of preventing the *arrest*, Defendant resisted by fleeing from the officer.

■■■ "The facts needed to determine whether an officer was making a stop versus the facts needed to determine if an officer was making an arrest are different." *Id.* In convicting Defendant of *felony* resisting arrest, the jury was not required to find that Trooper Bearden was making an investigatory stop. While there may have been sufficient evidence from which a jury could have made such a finding, the jury did not have the chance to consider whether Trooper Bearden was making a stop. Because the jury was not required to find all of the elements of the misdemeanor offense of resisting a lawful stop by fleeing, we decline to enter a conviction for that offense. *See Hunter*, 179 S.W.3d at 321.

We reverse Defendant's conviction and corresponding judgment and sentence for felony resisting arrest. In doing so, we note that the State does not raise the issue of whether or not there should be a remand for a new trial for the misdemeanor offense. In all other respects, the judgment of the trial court is affirmed.

BARNEY, and LYNCH, JJ., concur.