

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD78404** |
| | ) | |
| **v.** | ) | **OPINION FILED: May 3, 2016** |
| | ) | |
| **JAMES EARL LEE,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Saline County, Missouri**
The Honorable Dennis A. Rolf, Judge

Before Division Three: Gary D. Witt, Presiding Judge, James E. Welsh, Judge and
Anthony Rex Gabbert, Judge

James Earl Lee ("Lee") was charged with felony possession of a controlled substance (cocaine), misdemeanor possession of a controlled substance (less than thirty-five grams of marijuana), felony resisting arrest, and misdemeanor failure to properly maintain a vehicle license plate, all arising out of a 2014 traffic stop. Following a bench trial, the Circuit Court of Saline County, Missouri, found him guilty of all counts and sentenced him as a prior and persistent drug offender. Lee appeals the judgment, alleging the circuit court erred in failing to suppress all evidence of the drugs found because the search which set in motion the discovery of the drugs violated his Fourth Amendment

rights. Lee also argues that there was insufficient evidence to convict him of felony resisting arrest. We agree and reverse the court's judgment of conviction as to all counts except for Lee's conviction for failure to properly maintain a vehicle license plate and remand for execution of that sentence.

## Procedural and Factual Background[1]

On May 2, 2014, Lee was traveling on I-70 when he was stopped by Missouri State Highway Patrol Trooper Duvall for driving without a front license plate. When Trooper Duvall approached Lee's vehicle, he observed the license plate on the dashboard of the vehicle instead of properly affixed to the front of the vehicle. Trooper Duvall also smelled a "very strong" order of raw marijuana coming from inside the car. Lee was unable to produce a driver's license or other identification, and Trooper Duvall escorted Lee to his patrol car for further investigation.

While in the patrol car, Trooper Duvall performed a computer check of the license plate and the name and identifying information that Lee had given him. Trooper Duvall was able to obtain Lee's photograph from the Department of Revenue and confirmed Lee's identity and that there were no warrants for his arrest. Trooper Duvall continued to smell raw marijuana and asked Lee for an explanation. Lee stated that he was on "parole and probation" for marijuana use but stated that his girlfriend, who was recently a passenger in the vehicle, had used a vaporizer to ingest marijuana and that she had a "license" for the vaporizer. Lee gave Trooper Duvall permission to search his vehicle,

---

[1] The facts are recited in a light most favorable to the verdict. *Ferguson v. State*, 325 S.W.3d 400, 404 n.2 (Mo. App. W.D. 2010).

2

and Trooper Duvall called for another officer, Trooper Dancy, to come and supervise Lee while he conducted the search.

Trooper Duvall searched Lee's vehicle and found no illegal contraband but seized a box of Swisher Sweet cigarillos.[2] Trooper Duvall noted that, without Lee present, the vehicle no longer smelled of marijuana. Finding no marijuana or other contraband in the vehicle, he decided to search Lee for drugs. Trooper Duvall returned to the patrol car and ordered Lee to exit the vehicle and put his hands on top of it. Trooper Duvall then conducted what he characterized as a pat down, searching both the outside of Lee's clothing and inside his pockets. Trooper Duvall had obtained neither a warrant nor Lee's consent for this search of Lee's person. Trooper Duvall testified that he had no reason to believe that Lee possessed a weapon or was otherwise dangerous. During the search, Trooper Duvall felt a small, hard, round object behind Lee's right knee.

Upon feeling the object, Trooper Duvall said, "Okay. Go ahead and put your hands behind your back." Trooper Duvall could not identify the object but testified that at that point he was concerned "for both our safety" and planned to "detain" Lee. Instead of complying with Trooper Duvall's command, Lee fled on foot.

Trooper Duvall and Trooper Dancy pursued Lee on foot and were able to recapture him after Lee and Trooper Duvall tumbled down an embankment. Lee escaped again, however, and, as they ran, Trooper Dancy informed Lee to stop and that he was under arrest. Lee was again captured and subdued.

---

[2] Cigarillos are known by law enforcement officers to be, at times, used in the smoking of marijuana.

After handcuffing Lee, Trooper Dancy searched Lee and found a clear plastic bag of marijuana around his left ankle and a clear plastic bag of cocaine around his right ankle.

Prior to trial, Lee moved that the evidence of the drugs be suppressed because Trooper Duvall violated Lee's Fourth Amendment rights against unreasonable search and seizure by failing to get a warrant or Lee's consent prior to the first "pat down" search of his person. Following a suppression hearing, the court denied Lee's motion. Lee renewed his objection to the evidence at the bench trial.

The court found Lee guilty of all counts and sentenced him as a prior and persistent offender. This appeal followed.

## I.

Lee's first point on appeal alleges that the circuit court erred in admitting evidence regarding the controlled substances found on Lee's person because they were found as a result of an illegal search. Lee alleges that, although the drugs were not found until the second search, had the first "pat down" search not been conducted, the drugs would never have been located. Thus, if the first pat down was illegal, the evidence should have been suppressed.

As a preliminary matter, the State challenges the preservation of Lee's claim for appeal. "In order to attack the validity of a search and the admissibility of the fruits of that search on appeal, the defendant must have filed a motion with the trial court to suppress the evidence." *State v. Anderson*, 698 S.W.2d 849, 851 (Mo. banc 1985). Additionally, to keep the challenge preserved for appeal, the defendant must assert timely

4

objections throughout trial and raise the issue in a motion for new trial.[3]  *Id.*; *State v. Turner*, 471 S.W.3d 405, 412 (Mo. App. E.D. 2015); *State v. Ruff*, 360 S.W.3d 880, 884 (Mo. App. S.D. 2012).   The record clearly indicates that Lee properly raised his challenges to the seizure of the evidence in a motion to suppress, objected prior to testimony regarding the second pat down that led to the seizure of the evidence, objected prior to the admission of the evidence seized.   The State, however, argues that Lee's failure to object to testimony regarding the first pat down waived his claim and preserved nothing for appeal.   We disagree.

A defendant's objection is "kept alive" at trial "by timely objection *to the introduction* [of evidence] at trial  . . . ."  *State v. Taylor*, 538 S.W.2d 761, 764 (Mo. App. 1976) (emphasis added).   Although testimony regarding what led to the pat down is relevant to determine the legality of the search, Lee's objection is to the *evidence yielded* as a result of the illegal search--the drugs.   Thus, his objection to the evidence being introduced at trial was timely and preserved the issue for appeal.

### Standard of Review

> At a hearing on a motion to suppress, "the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled."  *State v. Franklin,* 841 S.W.2d 639, 644 (Mo. banc 1992).   "When reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling."  *State v. Pike,* 162 S.W.3d 464, 472 (Mo. banc 2005).   "The Court defers to the trial court's determination of credibility and factual findings, inquiring only 'whether the decision is

---

[3] Because this was a bench tried case, Lee did not need to raise the issue in a motion for new trial to preserve the issue for appellate review.  Rule 29.11(d).

5

supported by substantial evidence, and it will be reversed only if clearly erroneous.'" *State v. Goff,* 129 S.W.3d 857, 862 (Mo. banc 2004), quoting *State v. Edwards,* 116 S.W.3d 511, 530 (Mo. banc 2003). By contrast, legal "determinations of reasonable suspicion and probable cause" are reviewed *de novo. Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

*State v. Grayson*, 336 S.W.3d 138, 142 (Mo. banc 2011).

### Discussion

Missouri's constitutional guarantee against unreasonable searches and seizures is co-extensive with that of the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment. *State v. Rushing*, 935 S.W.2d 30, 34 (Mo. banc 1996). The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. CONST. amend IV; *Rushing*, 935 S.W.2d at 34.

"Searches conducted outside of the judicial process, without prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal citations omitted). A "warrantless search of the person is reasonable only if it falls within a recognized exception" to the Fourth Amendment. *Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013).

> A search is not unreasonable under the Fourth Amendment if it is: (1) a search incident to a lawful arrest; (2) a seizure of items falling within the plain view doctrine; (3) a search of an automobile where probable cause exists to believe that it contains a substance which offends the law; or (4) a protective search by officers for weapons upon less than probable cause to arrest.

6

*State v. Leavitt*, 993 S.W.2d 557, 561 (Mo. App. W.D. 1999). There also exists a well-recognized exception for exigent circumstances. *McNeely*, 133 S.Ct. at 1558. The U.S. Supreme Court has specifically noted there may be exigent circumstances where there is a need to provide emergency assistance to the occupant of a home, a "hot pursuit" of a fleeing suspect, police need to enter a burning building to put out a fire, or where police need to prevent the imminent destruction of evidence. *Id.* at 1558-59.

The question we must answer is whether there was an exception to the warrant requirement of the Fourth Amendment applicable to these facts. The State alleges that the search was a proper protective search under *Terry*.[4] In the alternative, the State argues that the search was valid as a search incident to arrest, because there was probable cause to believe Lee possessed drugs on his person, or, in the alternative, there were exigent circumstances. Finally, the State contends that, even if the seizure of the drugs was not legal, there was no prejudice to Lee because they would have been inevitably discovered.

"When a motion to suppress is overruled and the evidence was introduced at trial, an appellate court will consider the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted." *State v. Cunningham*, 193 S.W.3d 774, 778 (Mo. App. S.D. 2006).

We will address each of the State's arguments as to why this constituted a valid search in turn.

---

[4] *Terry v. Ohio,* 392 U.S. 1 (1968).

A. *Terry v. Ohio*

Under *Terry v. Ohio*, an officer may briefly detain a person if the officer has a reasonable suspicion that the person is involved in criminal activity and he may conduct a frisk or pat down search of the suspect if the officer reasonably believes the person may be armed and dangerous. 392 U.S. 1, 30 (1968); *State v. Goff*, 129 S.W.3d 857, 864-65 (Mo. banc 2004).[5] "The officer must have more than a hunch; he or she must have a reasonable, particularized suspicion that the suspect is *armed*." *Goff*, 129 S.W.3d at 865 (emphasis added). The officer must be "able to point to *specific* and *articulable* facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21 (emphasis added).

If a stop is valid under *Terry*, an officer may conduct a pat down search of a suspect's outer clothing "if they have a reasonable, particularized suspicion that the suspect is armed." *Leavitt*, 993 S.W.2d at 561. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.*; *Adams v. Williams*, 407 U.S. 143, 146 (1972); *Cunningham*, 193 S.W.3d at 778. The "sole justification" for the search must be to locate a hidden weapon. *Terry*, 392 U.S. at 29. "In analyzing a search pursuant to *Terry* 'it is material to inquire' whether an officer could reasonably believe an object discovered during the pat down was a weapon." *Leavitt*, 993 S.W.2d at 561. "Because there is no ready test for determining reasonableness, there is a need to balance the search, or the seizure, against

---

[5] The Missouri Supreme Court has held that traffic stops are analogous to a *Terry* stop. *State v. Schroeder*, 330 S.W.3d 468, 473 (Mo. banc 2011).

8

the invasion of the person's body which the search entails." *State v. Hensley*, 770 S.W.2d 730, 734 (Mo. App. S.D. 1989). "[T]he police officer must be able to point to specific and articulable facts, which taken together with rational inferences derived from those facts, reasonably warrants the intrusion." *Id.*

Neither Trooper Duvall nor Trooper Dancy articulated any facts to support an argument that either of them believed Lee had a weapon. In fact, both officers testified that they were not in fear for their safety prior to the pat down of Lee. Trooper Duvall plainly testified that his sole purpose in conducting a pat down of Lee was to search for drugs. On direct examination he stated that he conducted the search of Lee only after he did not find contraband in the vehicle.

> [State]. After you completed your search of the vehicle, what was the next step that you took in the investigation?
>
> [Trooper Duvall]. Well, since I didn't find any other contraband [in the vehicle], I went ahead and as well searched the subject himself.

When further questioned by defense counsel, it became extremely clear that Trooper Duvall was neither in fear for his safety nor believed there was a weapon prior to the search.

> [Defense Counsel]: While you were in the vehicle waiting for backup to arrive so she could sit with him while you searched his vehicle, did he do anything threatening or frightening, anything that would cause you to think he was armed or dangerous?
>
> [Trooper Duvall]: No.
>
> . . . .

9

[Defense Counsel]: As you returned and searched the Defendant [after the search of the vehicle], this was not because you believed him to be armed and dangerous, correct?

[Trooper Duvall]: No, it was strictly --

[Defense Counsel]: Nothing happened that caused you to -- would not impact on weapons?

[Trooper Duvall]: No.

At trial, Officer Duvall again testified that he did not believe that Lee was armed:

[Defense Counsel]: He had not given you any reason to believe he was

armed?

[Trooper Duvall]: No.

He agreed that his search was only because he had not found drugs in the car.

Additionally, instead of conducting a "pat down" search, as permitted under *Terry*,

Trooper Duvall actually conducted a full search of Lee.[6]

[Defense Counsel]: Okay. And your search exceeded just a pat down

search. In fact, you are actually are [sic] on the video putting your hands in

his pockets and -- his pants pockets and things like that aren't you?

[Trooper Duvall]: Yes.[7]

---

[6] Trooper Duvall admitted during cross-examination that his search extended beyond the scope authorized by *Terry* by reaching into Lee's pockets. *Terry* allows an officer to "pat a suspect's outer clothing" to determine if the suspect has a weapon. *Terry*, 392 U.S. at 27. In *Minnesota v. Dickerson*, the U.S. Supreme Court approved the "plain-feel" exception that reasoned if "a police officer pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . ." 508 U.S. 366, 375-76. There is, however, no extension of *Terry* that allows an officer to reach into a suspect's pockets as part of the pat down. *See, State v. Hutchinson*, 796 S.W.2d 100, 108-09 (Mo. App. S.D. 1990) (noting that exploratory search of suspect's pocket when all that was felt was Chap Stick was beyond the bounds of *Terry*).

[7] The video was not provided as part of the record on appeal.

10

Trooper Dancy also testified that she did not find Lee to be threatening or have reason to believe there was a weapon present prior to the search.

Under *Terry*, we look to whether a "reasonably prudent" person would be warranted in the belief that there was a danger to his or her safety. *Cunningham*, 193 S.W.3d at 779. In *Cunningham*, the court found that the search of defendant was lawful where the officer noted a bulge in defendant's pants which defendant attempted to conceal, the defendant appeared nervous and fled from the officer, and the officer was without backup. *Id.* "The totality of the circumstances provided [the officer] a reasonable belief that [defendant] was involved in criminal activity and the person with whom he was dealing may have been armed and presently dangerous." *Id.* at 780. In *State v. Gantt*, the Southern District found a search was legal although the officer testified that he noticed a plastic bag sticking out of defendant's pants and that he was only concerned that defendant "possibly" had a gun. 87 S.W.3d 330 (Mo. App. S.D. 2002). The court noted the defendant lied about the bag, the defendant's appearance seemed peculiar, and the encounter was at night on the side of the highway. *Id.* at 334. But, in *Taylor v. State*, this court found that a prior arrest record, presence in a high crime neighborhood, and known history of the sale of drugs were not in themselves sufficient to warrant a frisk when citing an individual for a traffic violation. 234 S.W.3d 532, 538 (Mo. App. W.D. 2007).

Ignoring all the officer's statements that they were not, in fact, in fear for their safety, we look instead to the circumstances as would a removed reasonable person. Trooper Duvall smelled raw marijuana in Lee's vehicle and on Lee's person, leading him

11

to believe that Lee was involved in criminal activity. He appeared nervous and fidgety and was sweating. Trooper Dancy also smelled raw marijuana on Lee's person. They were located on the highway in the early evening. These facts, however, are tempered by Lee's compliant demeanor. Lee gave the trooper his true identity, even though he did not have a driver's license on his person. While waiting for Trooper Dancy to arrive, Trooper Duvall and Lee spoke for at least ten minutes "about basketball and kids and family," during which Lee was compliant and respectful. At no time did either officer notice a bulge on Lee that could have possibly been a weapon. The search was conducted only after both officers spent an extended period of time with Lee alone in the patrol car which, presumably, would not have been done by a reasonable person if there were the slightest belief that Lee was armed or dangerous.

Under the totality of the circumstances, we cannot say that a reasonable person would have feared that Lee had a weapon. Although we are not bound by the subjective intent of the officers, it defies logic to find a reasonable person would have been in fear that Lee had a weapon, where two experienced officers testified they did not have such a fear and, in fact, did not search for a weapon until they had each remained alone with the defendant for an extended period.

We find *Terry v. Ohio* to be inapplicable to the facts of this case.

B. Probable cause to arrest for drugs

The State next argues that the initial search of Lee was justified because there was probable cause to search his person based on the strong odor of marijuana. The State relies on a number of cases from foreign jurisdictions finding that under the "plain smell"

12

doctrine, there is probable cause to arrest a defendant where there is a strong odor of marijuana coming from a person. *See Jenkins v. State*, 970 A.2d 154, 158-59 (Del. 2009) (strong odor of marijuana and driver's behavior were sufficient to give officer probable cause to arrest driver for driving under the influence and search his vehicle; court did not address the frisk that was conducted prior to arrest that yielded no contraband); *Commonwealth v. Garden*, 883 N.E.2d 905, 910-11 (Mass. 2008) (probable cause and exigent circumstances allowed for the search of vehicle occupants where "the smell of marijuana was coming from their clothing") (superseded by statute); *State v. Smith*, 593 A.2d 210, 212-13 (Me. 1991)(search of vehicle passenger was warranted under probable cause and exigent circumstances where there was a "moderate and fresh smell of marijuana" and driver had no incriminating evidence on his person); *Butler v. U.S.*, 102 A.3d 736, 739-742 (D.C. App. 2014) (probable cause to arrest and search defendant incident thereto where defendant was the sole occupant of the vehicle, making it likely that the smell of marijuana was coming from either the vehicle or his person); *State v. T.T.*, 594 So.2d 839, 840 (Fla. App. 1992) (strong smell of marijuana on defendant justified arrest and warrantless search); *Edmond v. State*, 951 N.E.2d 585, 591 (Ind. App. 2011) (odor of marijuana on defendant's breath and in his vehicle gave probable cause to arrest and search the defendant). A majority of these cases are distinguishable because they deal with searches incident to arrest.[8]

---

[8] The other cases rely on probable cause coupled with the exigency exception to prevent destruction of evidence in finding the search legal. The State raises exigency as a separate issue which is discussed below.

13

In this case, neither officer testified as to any basis to arrest Lee for any offense prior to conducting the search. Neither officer testified that Lee appeared to be impaired from the effects of marijuana or otherwise to support an arrest for driving while intoxicated. Both officers were clear that the odor they smelled was "raw" marijuana, not "burned" marijuana, an indication that Lee had not ingested the marijuana. Neither officer testified that Lee was placed under arrest for any violation prior to the search.

At times, a valid search incident to arrest may precede the actual arrest. *Rawlings v. Kentucky*, 448 US. 98, 111 (1980). In *Rawlings*, the defendant had been read his *Miranda*[9] warnings and was in the process of being arrested at the time of the search, only lacking "formal arrest." *Id.* In this case, however, there is no testimony that Trooper Duvall intended to arrest Lee for drugs or any other offense prior to the search or was intending to do so contemporaneously with this search. As noted by the dissent in *Butler*, "under the search-incident-to-arrest exception to the warrant requirement, the government needs more than just probable cause to arrest. It needs an arrest." *Butler*, 102 A.3d at 743 (dissent). "Rescinding this historical rule turns the search-incident-to-arrest exception into a search-incident-to-probable-cause-to-arrest exception, disregarding the Supreme Court's repeated pronouncements describing warrant exceptions as 'specifically established,' 'well delineated,' and 'jealously and carefully drawn.'" *Id.* at 746 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971)).

We agree with the dissent in *Butler* from the District of Columbia and find the Southern District's holding in *State v. Gambow* directly applicable to this case. 306

---

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966).

S.W.3d 163 (Mo. App. S.D. 2010). In *Gambow*, defendant was a passenger in a car that was stopped for speeding. *Id.* at 163. The officer conducting the stop smelled marijuana and asked the driver for permission to search the vehicle. *Id.* The officer then conducted a *Terry* pat down of Gambow during which he felt a hard object he did not believe to be a weapon. *Id.* He ordered Gambow to empty his pockets and, without consent, opened a small container, which came from his pocket, finding narcotics. *Id.* at 164. The defense sought to exclude the evidence based on the illegal search, and the State argued that "the police, with probable cause to search a vehicle, also have the right to search the persons in the automobiles." *Gambow*, 306 S.W.3d at 164. The court held, however, that while the smell of marijuana may justify searching the car's interior and a defendant's personal possessions, "it will not alone justify the warrantless search of the vehicle's occupants themselves." *Id.* We agree.

The State attempts to distinguish *Gambow* from this case noting that there were multiple occupants of the vehicle and thus officers could not have a particularized suspicion that Gambow was the source of the marijuana smell. While in this case Lee was the sole occupant of the vehicle, he volunteered to officers that the smell came from the vaporizer of a recent passenger of his vehicle. The State argues that the troopers "investigated" this explanation and "determined it to be false." While it may have been that the officers did not believe Lee, there is no indication that any investigation was made into his explanation or that anything in their investigation proved this statement to be false. But, more importantly, this is a distinction without a difference. Nothing about having a single occupant of a vehicle where the smell of marijuana is present justifies an

15

exception to the Fourth Amendment and allows a complete search of his person. This was not a search incident to arrest where it is clear that, prior to Lee fleeing, Trooper Duvall had no intention to arrest him. Had Trooper Duvall wanted to search Lee for contraband he could have obtained consent or obtained a warrant and conducted a search. Searching Lee prior to taking one of these actions was illegal.

We find *Gambow* controlling and at the time of the search there were no grounds to arrest Lee, such that a warrantless search incident to arrest would have been authorized.

C.  Exigent Circumstances

As noted above, both Massachusetts and Maine have recognized the legality of a search of a person where there is probable cause to suspect a person is in possession of drugs because exigent circumstances exist in that the suspect could destroy the evidence before a warrant is obtained. We can find no similar recognition in Missouri and no support for such an argument in this case. Trooper Duvall made no effort to obtain consent or a warrant to search Lee. He was easily able to request another officer to report to the scene to supervise Lee, and there is no argument presented as to why he could not have obtained a warrant under these circumstances. It is unlikely that Lee could have destroyed, hidden, or consumed the drugs--as the State argues--while being continuously monitored in the patrol car.

The State's argument as to exigency is primarily premised on Lee's subsequent flight. The challenged search, however, is the first search, not the second. At the time of the second search, Lee had been arrested, making it a proper search incident to arrest

16

(assuming, *arguendo*, that its fruits are not subject to suppression based upon an unconstitutional first search). There is no evidence to support a finding of exigency prior to the first search.

D. Search incident to arrest/fruit of the poisonous tree

The State next argues that, even if the pat down was not justified under *Terry*, it was proper because Trooper Duvall was warranted in conducting a search incident to arrest. The State argues first that the first pat down search was a search incident to arrest for the traffic violation and but also that the second search was a proper search incident to arrest after Lee fled from arrest. We disagree.

An exception from the rule that warrantless searches are *per se* unreasonable is if the search is incident to a lawful arrest. *United States v. Robinson*, 414 U.S. 218, 224 (1973). The United States Supreme Court has made clear the reasoning behind this exception:

> When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless search of the arrestee's person and the area within his immediate control. . . .

*United States v. Chadwick*, 433 U.S. 1, 14 (1977) (internal quotations omitted).

The State contends that, because at the time of the first search, Lee *could* have been arrested for the traffic violation, the search was a lawful search incident to an arrest. The failure to properly affix a license plate to a vehicle is a violation of section 304.130,[10]

---

[10] All statutory citations are to RSMo 2000 as currently updated, unless otherwise indicated.

which is deemed to be an infraction pursuant to section 301.440 and subject to a maximum fine $200. Trooper Lee testified that he intended to give Lee a warning for not properly displaying his license plate and that the later charge was only filed because he was also being arrested for other offenses. As indicated above, Lee had not been placed under arrest at the time of the first pat down search and neither trooper expressed any indication that they had the intent to arrest Lee at that point in time.

The State further contends that, even if the first pat down was not justified under *Terry*, it is immaterial because the second search, during which the drugs were actually located, was justified. The State cites to *Illinois v. Wardlow*, in which the United States Supreme Court held that a person's flight from police justified the person's detention and the officers' pat down search for weapons. 528 U.S. 119, 125-26 (2000). While it may be the case that flight warrants a *Terry* stop and frisk, in this case, the second pat down was a direct result of Trooper Duvall conducting his first unconstitutional pat down and in which he felt an object below Lee's knee. It was only at that point, after the unconstitutional action by the trooper had occurred, that Lee fled. Where the illegal conduct of the police caused the flight, and neither the flight nor the second pat down would have occurred but for the unconstitutional actions, the flight does not justify the search. In *Wardlow*, there were no prior unconstitutional actions by police and the pat down conducted was legitimately a protective search for weapons allowed under *Terry*. 528 U.S. at 125. Here, the second search was merely a continuation of the unconstitutional search begun by Trooper Duvall, which set into motion Lee's flight.

18

The State argues that the attenuation doctrine purges the "primary taint" of the first illegal search is not purged under the attenuation doctrine. *State v. Hosier*, 454 S.W.3d 883, 892-93 (Mo. banc 2015). "To determine if evidence has been 'purged of the primary taint,' courts consider three factors: (1) the temporal proximity between the illegality and the procurement of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* at 892. In *Hosier*, the court noted that the first factor cautioned against admitting the evidence because the illegally obtained cell phone "ping" order took place about two hours prior to the search. *Id.* In this case, the illegal conduct was mere minutes before the search yielding the contraband. In *Hosier*, while the court found that defendant leading the police on a car chase satisfied the intervening circumstances factor, the defendant's flight was not directly correlated to the officer's illegal act. Hosier did not flee *because* the police obtained an illegal ping order. In this case, Lee fled from police only because Trooper Duvall felt what Lee knew to be contraband while Trooper Duvall conducted the unconstitutional search.

Finally, the court in *Hosier* found the police misconduct not to be flagrant because courts are split as to whether a probable cause showing is necessary prior to obtaining real-time cell phone location information. *Id.* at 893. In this case, Trooper Duvall admitted that the search was solely a search for drugs, which is not allowed under Missouri law. Further, the trooper readily admitted that he went beyond the bounds of

19

any recognized search under *Terry* to reach inside Lee's pockets, which is unquestionably unconstitutional conduct.[11]

The State is correct that, generally, there exists an exception to the warrant requirement for a search incident to arrest. *Gant*, 556 U.S. at 338-39. But such an exception does not apply when it is a direct result of the unconstitutional conduct of officers, as discussed above. Lee was not being arrested by Trooper Duvall, nor was arrest even being considered until *after* the illegal search. Thus, the search is not protected under this exception.

E. Inevitable Discoverability

The State's final argument is that, regardless of the legality of the search, the drugs should not be excluded because they would have been inevitably discovered during Lee's arrest or the inventory process at the jail. The inevitable discovery doctrine acts as an exception to the exclusionary rule and holds that:

> If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . the deterrence rational [deterrence of unlawful police conduct] has so little basis that the evidence should be received. Anything less would reject logic, experience and common sense.

*State v. Butler*, 676 S.W.2d 809, 813 (Mo. banc 1984) (quoting *Chapman v. California*, 386 U.S. 18, 22 (1967)). The State, however, fails to present any argument as to why the evidence would have been inevitably discovered in *this* case. Trooper Duvall did not

---

[11] The State cites to cases from the Eighth and Ninth Circuits which have found that while an initial stop may not have been legal, the defendant's flight or resistance to arrest purged the primary taint of the original conduct justifying the subsequent search. *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Circ. 1995); *United States v. Garcia*, 516 F.2d 318, 319 (9th Circ. 1975). These cases are not binding precedent in this Court. Further, we find in this case the cause and effect correlation between the illegal conduct and the flight too great to find that the independent actions of Lee purged the illegal conduct of the officers.

20

intend to arrest Lee for the traffic infraction, adding that charge only after he determined to arrest Lee for other more serious offenses of drug possession and resisting arrest. Absent the illegal search, there is no indication that Lee would have been arrested leading to the inevitable discovery of the drugs on his person.

We find that the drugs found on Lee should have been excluded. The first search was not permissible under any recognized exception to the Fourth Amendment. Lee's flight did not purge the taint of the first search from the second search. Therefore, we reverse Lee's convictions for Count I, Possession of Controlled Substance Except 35 Grams Or Less Of Marijuana, and Count II, Possession of Up to 35 Grams Marijuana, and order that Lee be discharged on these counts. *See State v. Brightwell*, 984 S.W.2d 124, 126 (Mo. App. W.D. 1998).

## II.

Lee's second point on appeal alleges that the circuit court erred in finding him guilty of felony resisting arrest because, at the time Lee fled, it was not clear that he was being arrested--as opposed to simply being legally detained. Resisting arrest for a felony is a felony under section 575.150.5, but resisting a detention or stop is only a misdemeanor offense unless the state proves that it was done in a manner which creates a substantial risk of serious physical injury or death to any person. To find Lee guilty of the charge as filed, the court was required to find that, at the point Lee fled, Trooper Duvall was attempting to arrest him for a felony or that Lee fled detention in a way that created a substantial risk of serious physical injury or death.

## Standard of Review

The standard for reviewing claims challenging the sufficiency of evidence is well-established. *State v. Clay,* 975 S.W.2d 121, 139 (Mo. 1998). On review, the Court accepts as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. *Id.* In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.* In considering whether the evidence is sufficient to support the verdict, this Court considers whether a reasonable juror could find each element of a crime beyond a reasonable doubt. *Id.* When reviewing for sufficiency of the evidence, circumstantial evidence is afforded the same weight as direct evidence. *State v. Hutchison,* 957 S.W.2d 757, 767 (Mo. banc 1997). If there actually is insufficient evidence to support a guilty verdict, then a directed verdict of acquittal is authorized. *State v. Holloway,* 992 S.W.2d 886, 889 (Mo. App. S.D.1999).

*State v. Brooks*, 158 S.W.3d 841, 847 (Mo. App. E.D. 2005).

## Discussion

We begin by noting that section 575.150.4 specifically states that "[i]t is no defense to a prosecution [for resisting arrest] that the law enforcement officer was acting unlawfully in making the arrest." Thus, we address Lee's second point.

In order to find Lee guilty of felony resisting arrest, the court needed to find both that at the time Lee fled: (1) Trooper Duvall was attempting to arrest Lee and (2) the arrest was for a felony. Section 575.150. Or, in the alternative the State needed to show that when Lee fled he did so in a manner that created a substantial risk of serious physical injury or death to any person. *Id*. Resisting arrest is only a felony offense if the underlying offense is a felony and the resistance is accomplished by means other than flight. *State v. Furne*, 642 S.W.2d 614, 616 (Mo. banc 1982). "The relevant inquiry to

determine whether appellant's resistance constituted a felony is not whether the appellant is guilty of the underlying charge." *State v. Merritt*, 805 S.W.2d 337, 339 (Mo. App. E.D. 1991). What matters is whether the officer was contemplating making a felony arrest. *Id.*; *State v. Wanner*, 751 S.W.2d 789, 791 (Mo. App. E.D. 1988) (officer testified that he only intended to "warn" the defendant about his driving not to arrest him thus Wanner could not be guilty of resisting arrest). "The relevant inquiry is not whether the defendant is guilty of the charge for which he or she was arrested, but whether the arresting officer contemplated making a felony arrest." *State v. Jordan*, 181 S.W.3d 588, 592 (Mo. App. E.D. 2005). In *Jordan*, the defendant struck an officer with his car while the officer was attempting to stop his vehicle. *Id.* at 591. He was later stopped and arrested by another officer who testified he intended to arrest Jordan for "evading my red lights, and siren." *Id.* at 593. Although striking the officer did constitute a felony, because it was not the officer's intent to arrest him for such an offense, there was insufficient evidence to find him guilty of felony resisting arrest. *Id.*; *see also, State v. Hunter*, 179 S.W.3d 317, 320-21 (Mo. App. E.D. 2005) (although defendant was ultimately convicted of felony stealing and second degree burglary, he was not guilty of felony resisting arrest because, at the time he fled, there was no indication that the officer intended to arrest him for felony offenses).

The series of events leading to Lee's flight were that, after feeling the object on Lee's leg, Trooper Duvall "requested him to put his hands behind his back, at which time he attempted to flee." "[T]he offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest." *State v. St. George*, 215 S.W.3d

23

341, 345 (Mo. App. S.D. 2007). "An arrest is in progress once the officer is attempting to actually restrain or control the person of the defendant." *Id.* at 346. "The facts needed to determine whether an officer was making a stop versus the facts needed to determine if an officer was making an arrest are different." *State v. Joos*, 218 S.W.3d 543, 550 (Mo. App. S.D. 2007). Whether the intent was to arrest for a felony or merely detain is important because, while the former is a felony, the latter is only a misdemeanor offense. *Hunter*, 179 S.W.3d at 320-21.

We must determine whether, prior to Lee's flight Trooper Duvall intended to arrest him for felony possession of cocaine as charged in the indictment. We find he did not. First, the testimony of Trooper Duvall does not support that he was attempting to arrest Lee for any offense at the time Lee fled. Trooper Duvall had not informed Lee that he was under arrest nor does he testify that he had such intent. The only testimony regarding his intent was at the suppression hearing in which he testified that after feeling the object under Lee's pants: "I requested -- since I didn't know for sure what it was, for both our safety I went ahead and placed his hands behind his back to *detain* him, at which time he began to flee." (emphasis added).

Further, even if we ignore Trooper Duvall's testimony that at the time of Lee's flight he intended to "detain" him, the sequence of events cannot support intent to arrest for a felony at the point Lee initially fled. Trooper Duvall felt a hard object under Lee's pants but had failed to identify it as contraband or otherwise and he did not believe it was a weapon. Although he had a suspicion that Lee was carrying marijuana, there was no evidence to even suggest that he had cocaine such as allow him to arrest Lee for felony

24

cocaine possession.[12]  Where Trooper Duvall testified that he intended to "detain" Lee and, at the time of flight, Trooper Duvall had no reason to arrest Lee for a felony, we cannot find that Lee fled arrest much less a felony arrest.

This, however, is not the end of our inquiry.

> For resisting arrest to amount to a felony, the State must prove either that the offense for which the defendant was arrested was a felony or that the defendant resisted arrest by fleeing in such a manner that the person fleeing created a substantial risk of serious physical injury or death to any person.

*St. George*, 215 S.W.3d at 346.  Under section 575.150, a person may be guilty of felony resisting arrest, detention, or stop[13] where they "flee in such a manner that the person fleeing create[d] a substantial risk of serious physical injury or death to any person." Section 575.150.5.  There was testimony at trial that while chasing Lee, Trooper Duvall grabbed Lee and together they "tumbled down a large embankment."  The State, however, makes no argument that this caused a substantial risk of serious injury to Trooper Duvall.  Absent such an argument by the State and any evidentiary support that there was a "substantial risk of serious physical injury" to Trooper Duvall, Trooper Dancy, or another in the record, we will not presume such a risk.

---

[12] There was further no way for the officer to determine if this was in fact marijuana or that the amount of marijuana would have been more than 35 grams such that the amount of marijuana would have attained the felony level.

[13] Lee raises no challenge to the legality of the detention or stop.  An officer conducting a traffic stop may detain the defendant and conduct an investigation beyond the scope of the original traffic stop if the officer has a reasonable suspicion that the defendant is engaged in additional criminal activity.  *State v. Barks*, 128 S.W.3d 513, 517 (Mo. banc 2004).  The suspicion must be based on articulable facts.  *Id.*  In this case, the strong odor of raw marijuana immediately upon approaching the vehicle gave Trooper Duvall a reasonable suspicion to investigate to determine whether Lee had in his possession illegal drugs.

25

We agree that there was insufficient evidence presented to the circuit court to find Lee guilty of felony resisting arrest. We reverse the court's judgment as to Count III and discharge Lee as to this count.[14] *See Brightwell*, 984 S.W.2d at 126.

## Conclusion

We find the circuit court erred both in failing to suppress the evidence seized from Lee's person and in finding sufficient evidence to support the crime of felony resisting arrest. We reverse the court's judgment as it relates to his convictions on Charges I, II, and III and order Lee be discharged as to those three charges. The judgment and sentence as to Charge IV--failure to properly maintain his vehicle license plate is affirmed, as Lee makes no challenge to that conviction or sentence. The defendant shall be remanded to the custody of the Saline County Sheriff for execution of his ten day sentence on that charge, provided he has not fully served this sentence by time already served.

_____
Gary D. Witt, Judge

All concur

---

[14] The State makes no argument that we should find Lee guilty of the misdemeanor offense, resisting or interfering with a detention or stop, as a lesser-included offense of felony resisting arrest. *See State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). The Southern District has previously found that misdemeanor resisting a lawful stop by fleeing is not a lesser-included offense of resisting a felony arrest. *State v. Joos*, 218 S.W.3d 543, 550 (Mo. App. S.D. 2007). In *Joos*, the court found insufficient evidence to support felony resisting arrest and the state requested the court to enter a conviction for misdemeanor resisting a lawful stop and remand to the circuit court for resentencing. *Id.* The court found it was not a lesser-included offense and declined to enter a judgment for the misdemeanor. *Id.* The court further declined to remand for a new trial on the misdemeanor offense where it was not requested by the state. *Id.* Given *Joos*, we will not exercise any authority to enter judgment against Lee on a lesser-included offense or remand for a new trial on the misdemeanor offense.

26